1   CYNTHIA J. LARSEN (SBN 123994)
    clarsen@orrick.com
2   JUSTIN GIOVANNETTONE (SBN 293794)
    jgiovannettone@orrick.com
3   MARK C. SMITH (SBN 319003)
    mark.smith@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    400 Capitol Mall
5   Suite 3000
    Sacramento, CA  95814-4497
6   Telephone:     +1 916 447 9200
    Facsimile:     +1 916 329 4900
7
    *Attorneys for Intervenors*
8   *Westlands Water District, San Luis Water District,*
    *And Panoche Water District*

9

10                    UNITED STATES DISTRICT COURT

11                    EASTERN DISTRICT OF CALIFORNIA

12                          FRESNO DIVISION

13   NORTH COAST RIVERS ALLIANCE,          Case No. 1:16-cv-00307-DAD-SKO
     CALIFORNIA SPORTFISHING
14   PROTECTION ALLIANCE, FRIENDS OF       **NOTICE OF RELATED CASE**
     THE RIVER, and the WINNEMEM WINTU
15   TRIBE,                                **(L.R. 123)**

16                          Plaintiff,

17            v.                           DISTRICT JUDGE DALE A. DROZD
                                           MAGISTRATE JUDGE S. OBERTO
18   KENNETH SALAZAR, Secretary of the
     United States Department of the Interior,
19   DONALD R. GLASER, Regional Director of
     the United States Bureau of Reclamation,
20   MICHAEL JACKSON, Area Manager of the
     South-Central California Area Office of the
21   United States Bureau of Reclamation, and
     UNITED STATES BUREAU OF
22   RECLAMATION,

23                          Defendant,

24            and

25   WESTLANDS WATER DISTRICT, SAN LUIS
     WATER DISTRICT, and PANOCHE WATER
26   DISTRICT

27                          Intervenor-Defendants.

28

**NOTICE OF RELATED CASE**

Pursuant to Local Rule 123, counsel for Intervenors Westlands Water District, San Luis Water District, and Panoche Water District hereby notifies the Court that a recently filed case in the Northern District of California is related to the above-captioned case.  The case, No. 1:20-cv-05630, filed on August 13, 2020, is styled as follows:  HOOPA VALLEY TRIBE v. UNITED STATES BUREAU OF RECLAMATION; DAVID BERNHARDT, in his official capacity as Secretary of the Interior; BRENDA BURMAN, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST CONANT, in his official capacity as U.S. Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR (hereinafter, "*Hoopa Valley*").

The *Hoopa Valley* complaint seeks an order rescinding converted repayment contracts between Reclamation and Central Valley Project ("CVP") water contractors that have already been executed and enjoining execution of those repayment contracts still in the process of conversion.  *See Hoopa Valley*, Compl. for Declaratory and Injunctive Relief, ¶ 2, attached hereto as **Exhibit A**.  The *Hoopa Valley* plaintiff alleges that the repayment contracts violate the Central Valley Project Improvement Act ("CVPIA"), the Water Infrastructure Improvements for the Nation ("WIIN") Act, the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA").  *Id.*

In the case before this Court, Plaintiffs initially challenged Reclamation's interim contracts with Defendant-Intervenor Westlands Water District, alleging those contracts failed to comply with NEPA's Environmental Assessment ("EA") and Environmental Impact Statement ("EIS") requirements.[1]  Currently pending before the Court is Plaintiffs' Motion for Leave to File

---

[1] Plaintiffs' EIS challenge was dismissed (ECF No. 78) and the EA challenge is now moot, together with any subsequent challenge to the interim contracts, because the challenged contracts have all been converted.  *See* Status Report of Federal Defendants, July 15, 2020, ECF No. 122, ¶ 4 (noting "with regard to the mootness issue discussed by the Court in its March Order, the six interim renewal water service contracts that are addressed in the NEPA document challenged in this case are no longer capable of repetition because they no longer exist; they have all have been converted into repayment contracts under the WIIN Act.").  By filing this Notice, Intervenor-Defendants do not waive arguments that Plaintiffs' challenge to the interim contracts are moot or that any water contractors whose repayment contracts Plaintiffs seek to challenge in their [Proposed] Second Amended and Supplemental Compliant would become "necessary" parties to this action if Plaintiffs are permitted to amend and supplement their complaint.

NOTICE OF RELATED CASE
1:16-CV-00307-DAD-SKO

1    Second Amended and Supplemental Complaint Under Federal Rule of Civil Procedure 15

2    ("Motion"), ECF No. 120, which, in part, seeks to add new claims that are substantially similar to

3    those in *Hoopa Valley*.  Plaintiffs' Motion asks for this Court's approval to add three new claims

4    that – like the *Hoopa Valley* plaintiff's claims – seek an order setting aside and enjoining

5    execution of repayment contracts between Reclamation and CVP water contractors for alleged

6    violations of NEPA, the APA, and other laws.  [Proposed] Second Am. and Supplemental

7    Compl., Third, Fourth, and Fifth Claims for Relief, ECF No. 120, Exh. 1.

8            Local Rule 123(a) states that actions are related when any of the following conditions are

9    met:

10           (1) both actions involve the same parties and are based on the same or similar claim;

11           (2) both actions involve the same property, transaction, or event;

12           (3) both actions involve similar questions of fact and the same question of law and

13           their assignment to the same Judge or Magistrate Judge is likely to effect a

14           substantial savings of judicial effort, either because the same result should follow

15           in both actions or otherwise; or

16           (4) for any other reason, it would entail substantial duplication of labor if the actions

17           were heard by different Judges or Magistrate Judges.

18   E.D.C.A., L.R. 123(a).

19           Though only one of the conditions is required for cases to be related, here all are met.

20   First, the parties in *Hoopa Valley* overlap with, and the claims are substantially similar to, those in

21   this case.  L.R. 123(a)(1).  The agency defendants in both cases are the same: The United States

22   Department of Interior and the United States Department of Reclamation.[2]  Plaintiffs in *Hoopa*

23   *Valley* are different from those in this case, but all plaintiffs in both cases claim to represent

24   membership with similar interests in Reclamation's environmental review and management of the

25   CVP.

26           Further, if Plaintiffs in this case are permitted to amend and supplement their complaint,

---

[2] Plaintiffs in *Hoopa Valley* also name the Secretary of the Interior in his official capacity, the Commissioner of the Bureau of Reclamation in her official capacity, and the Director of Reclamation's California-Great Basin Regional in his official capacity.

NOTICE OF RELATED CASE
1:16-CV-00307-DAD-SKO

1  the claims for relief and legal theories of plaintiffs in both cases will be substantially similar.

2  Both seek to set aside and/or enjoin CVP repayment contracts on alleged grounds that the

3  contracts violate NEPA, the CVPIA, the APA, and other laws.  In addition, this Court has already

4  related another case that also challenges the CVP repayment contracts to this case: *Center For*

5  *Biological Diversity, et al. v. United States Bureau of Reclamation, et al*., Case No 1:20-cv-

6  00706-DAD-EPG (hereinafter, "*Center For Biological Diversity*").  Order Relating Case and

7  Reassigning District and Magistrate Judges, May 28, 2020, ECF No. 5.[3]  Plaintiffs' in *Center For*

8  *Biological Diversity* also seek to set aside and enjoin the repayment contracts on alleged grounds

9  that they violate NEPA, the CVPIA, and the APA.  Thus, subpart (a)(1) of Local Rule 123 is met.

10        In addition, the remaining prongs of Local Rule 123(a) are met.  Both cases "involve the

11  same property," in that they both involve the same contracts and Reclamation's water deliveries

12  under those contracts.  L.R. 123(a)(2).  Moreover, if Plaintiffs in this case are permitted to amend

13  and supplement their complaint, both cases will "involve similar questions of fact and the same

14  question of law."  L.R. 123(a)(3).  In particular, both cases will involve the legal questions of

15  whether Reclamation had discretion under the WIIN Act to enter into the contracts in question

16  and whether and to what extent NEPA analysis was required before doing so.  *Id*.  For this reason,

17  and for the reasons outlined with regard to the first and second conditions, above, "their

18  assignment to the same Judge or Magistrate Judge is likely to effect a substantial savings of

19  judicial effort."  *Id*.  Finally, given the interrelationship and overlap between the properties,

20  parties, claims for relief, and legal theories, it is likely that there would be "substantial duplication

21  of labor if the actions were heard by different Judges or Magistrate Judges."  L.R. 123(a)(4).

22  ////

23  ////

24  ////

---

25  [3] By this Order the Court also related the following additional cases to *Center for Biological Diversity*:

26  *Natural Resources Defense Council v. Bernhardt*, No. 1:05-cv-01207-DAD-EPG; *United States v. State*

27  *Water Resources Control Board*, No. 2:19-cv-00547-DAD-EPG; *California Natural Resources Agency v. Ross*, No. 1:20-CV-00426-DAD-EPG; and *Pacific Coast Federation of Fishermen's Associations v. Ross*,

28  No. 1:20-CV-00431-DAD-EPG.

NOTICE OF RELATED CASE
1:16-CV-00307-DAD-SKO

Accordingly, counsel for Intervenors hereby notifies the Court that these cases are related, pursuant to Local Rule 123(b).


Dated: Aug 20, 2020

CYNTHIA J. LARSEN
JUSTIN GIOVANNETTONE
MARK C. SMITH
Orrick, Herrington & Sutcliffe LLP


By:_____ */s/ Cynthia J. Larsen* _____
CYNTHIA J. LARSEN
Attorneys for Intervenors
Westlands Water District, San Luis Water
District, and Panoche Water District

4141-6158-8262

NOTICE OF RELATED CASE
1:16-CV-00307-DAD-SKO

# **Exhibit A**

Thomas P. Schlosser WSBA #06276
Thane D. Somerville WSBA #31468
MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:    206-386-5200
Fax:    206-386-7322
t.schlosser@msaj.com
t.somerville@msaj.com
Attorneys for Plaintiff Hoopa Valley Tribe

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | | |
|---|---|---|
| HOOPA VALLEY TRIBE, | ) | Civ. No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT FOR |
| v. | ) | DECLARATORY AND |
| | ) | INJUNCTIVE RELIEF |
| UNITED STATES BUREAU OF | ) | |
| RECLAMATION; DAVID BERNHARDT, in his | ) | Administrative Procedure Act Case |
| official capacity as Secretary of the Interior; | ) | |
| BRENDA BURMAN, in her official capacity as | ) | |
| Commissioner of the United States Bureau of | ) | |
| Reclamation; ERNEST CONANT, in his official | ) | |
| capacity as U.S. Bureau of Reclamation | ) | |
| California-Great Basin Regional Director; and | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | |
| INTERIOR | ) | |
| | ) | |
| Defendants. | ) | |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 1

# I.   **INTRODUCTION**

1.   Plaintiff Hoopa Valley Tribe ("Hoopa") hereby sues Defendants United States Bureau of Reclamation, David Bernhardt, in his official capacity as Secretary of the Interior, Brenda Burman, in her official capacity as Commissioner of the United States Bureau of Reclamation, Ernest Conant, in his official capacity as United States Bureau of Reclamation California-Great Basin Regional Director, and United States Department of the Interior (collectively herein, "Reclamation") for violations of the Central Valley Project Improvement Act (CVPIA)[1], the WIIN Act[2], the National Environmental Policy Act (NEPA)[3], and the Administrative Procedure Act (APA).[4]

2.   Hoopa seeks an order and judgment setting aside, declaring invalid, and rescinding Reclamation's conversion of certain time-limited Central Valley Project ("CVP") renewal contracts into permanent repayment contracts with water contractors (including but not limited to Westlands Water District Contract No. 14-06-200-495A-IR1-P) due to Reclamation's failure to comply with the CVPIA, NEPA, and APA.   Hoopa further seeks an order enjoining Reclamation from converting or amending any additional CVP contracts that Reclamation is in the process of converting into permanent repayment contracts absent full compliance with the CVPIA, NEPA, WIIN Act, and APA as discussed herein.

3.   In approving conversion of the renewal contracts into permanent repayment contracts, Reclamation has failed to comply with Section 3404(c)(2) of the CVPIA, which mandates incorporation of all requirements imposed by existing law as contract terms.   Relevant legal requirements include the CVPIA fishery mitigation, protection, and restoration (herein, "restoration") measures,  other legal requirements that confirm in-basin priority of Trinity River flow releases over out-of-basin diversions to Central Valley contractors, the fish and wildlife

---

[1] Pub. L. No. 102-575, §§3401-12, 106 Stat. 4600, 4706-31 (1992)
[2] Public Law 114-322, 130 Stat. 1628 (December 16, 2016),
[3] 42 U.S.C. §§ 4321 et seq.
[4] 5 U.S.C. §§ 501 et seq.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 2

preservation and propagation mandates in the Act of August 12, 1955, Pub. L. 84-386, 69 Stat. 719 (1955 Act), which authorized the Trinity River Division (TRD) of the CVP and the Trinity River Hatchery (TRH), and contractors' obligations to pay the costs of implementing these requirements pursuant to applicable law including CVPIA Section 3406(b)(23).

4.     Pursuant to Section 3404(c)(2), the legal priority of in-basin flow releases must be included as conditions on supply made available for delivery to CVP contractors.  CVP contractors must be explicitly contractually bound to all fishery restoration measures required by existing law, including the CVPIA, and corresponding payment obligations.  Reclamation's failure to include as contract terms the required fishery restoration, in-basin flow, and payment obligations imposed by existing law violates the clear statutory language of CVPIA Section 3404(c)(2).  Failure to specifically include the requirements of existing law as contract terms in the permanent contracts will directly impair Hoopa interests in the fish and water resources of the Trinity River that support its federally reserved rights.

5.     Diversions of water from the Trinity River to the Central Valley have had and continue to have a devastating impact on the fish, water, and other environmental resources of the Trinity River that Hoopa relies upon.  The action of converting the currently time-limited CVP contracts into permanent contracts is an action with significant environmental impacts that requires NEPA review.  Reclamation has discretion in determining and negotiating the terms and conditions of the contract conversions, and must comply with NEPA, including preparation of an Environmental Impact Statement ("EIS") and/or an Environmental Assessment ("EA") and evaluating appropriate alternatives before approving the contract conversions.  Reclamation has failed to prepare an EIS, EA, or to comply with NEPA in any way whatsoever.

6.     Because of its violations of CVPIA Section 3404(c)(2) and NEPA, Reclamation's approvals of the contract conversions also violate the APA as the approvals are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of the procedure required by law.  5 U.S.C. 704, 706.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 3

7.     Due to Reclamation's legal violations, Reclamation's approvals of the permanent contracts are legally invalid.  Reclamation's approvals and the contracts must be set aside by this Court and the matter remanded to Reclamation for further action consistent with law.

## II.     JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

8.     <u>Jurisdiction</u>:  This case presents federal law claims by an Indian tribe challenging federal agency action.  This Court has jurisdiction pursuant to 5 U.S.C. §§ 702 - 706, 28 U.S.C. § 1331, 28 U.S.C. § 1346, 28 U.S.C. § 1361 - 1362, and 28 U.S.C. § 2201 - 2202.

9.     Venue is properly vested in this Court under 28 U.S.C. § 1391(e)(1) because Hoopa and its Reservation are located in Humboldt County and because no real property is involved in this action.

10.     <u>Intradistrict Assignment</u>:  this case is properly assigned to the Eureka Division under Civil L.R. 3-2 because Hoopa and its Reservation are located in Humboldt County.

11.     There exists now between the parties an actual, justiciable controversy in which Hoopa is entitled to have a declaration of its rights and of Reclamation's obligations and in which Hoopa is entitled to declaratory and injunctive relief based on the allegations herein.

12.     This Complaint is timely filed within the applicable six-year statute of limitations set forth in 28 U.S.C. § 2401(a).

## III.     STANDING

13.     Hoopa, a federally-recognized Indian tribe, has standing to assert its claims herein.  Since time immemorial, Hoopa and its members, the Hupa people, have used and continue to use the Klamath-Trinity River system and its anadromous fishery resource for subsistence, cultural, ceremonial, religious, and commercial purposes.  The lower twelve miles of the Trinity River and a stretch of the Klamath River flow through the Hoopa Valley Reservation.

14.     Since time immemorial, the fishery resources of the Trinity and Klamath Rivers have been the mainstay of the life and culture of Hoopa and its people.  The fishery is "not

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 4

much less necessary to the existence of the Indians than the atmosphere they breathed." *Blake v. Arnett*, 663 F.2d 906, 909 (9th Cir. 1981) (quoting *United States v. Winans*, 198 U.S. 371, 381 (1905)). The salmon fishery holds significant commercial and economic value in Hoopa's culture and economy. *See* Memorandum from John D. Leshy, Solicitor of the Department of the Interior to the Secretary of the Interior (Oct. 4, 1993) (M-36979) (hereinafter "1993 Solicitor Opinion").

15.   The principal purpose of Hoopa's Reservation was to set aside sufficient resources of the Trinity and Klamath Rivers for the Indians to be self-sufficient and achieve a moderate living based on fish. *See* 1993 Solicitor Opinion 3, 15, 18-21, *cited with approval, Parravano v. Babbitt*, 70 F.3d 539, 542 (9th Cir. 1995), *cert. denied*, 518 U.S. 1016 (1996). Hoopa's federal reserved fishing right carries with it a corresponding right to Trinity and Klamath River flow levels that are sufficient to support a productive habitat for Hoopa's anadromous fishery, including but not limited to salmon and steelhead, including those produced by the TRH, and other culturally important salmon and non-salmonid species.

16.   Reclamation diverts water through the Trinity River Division (TRD) of the CVP, which would otherwise flow downstream through Hoopa's Reservation, and sends it out of the Trinity River Basin to implement the contracts at issue in this case. Congress and the Department of the Interior have repeatedly affirmed and required protection of in-basin flows in the Trinity River from impacts of Reclamation's TRD/CVP out-of-basin diversions. In the TRD's authorizing legislation in 1955 (Pub. L. 84-386, 69 Stat. 719), Congress conditioned out-of-basin diversions on preservation and propagation of fish and wildlife in the Trinity River Basin as well as on a separate provision for the annual release of not less than 50,000 acre-feet from Trinity Reservoir to be made available to Humboldt County and downstream water users including Hoopa.[5] In 1979, Interior Solicitor Krulitz explained that the provisos of Section 2 of

---

[5]  1955 Trinity River Division Central Valley Project Act (the "1955 Act"), Pub. L. No. 84-386, 69 Stat. 719, § 2.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 5

the 1955 Act limit the integration of the TRD into the CVP and require the Secretary to exercise

a priority for use of all TRD water necessary to protect fish and other in-basin needs over TRD

diversions to the Central Valley for use in the CVP.[6]

17.  In 1981, the Secretary of the Interior ordered increased flows into the Trinity

River from the TRD for the benefit of Hoopa and its fishery resources. The increased flows

were to be used in a study to determine what TRD releases in addition to the initial flow release

regimen established in the 1955 Act were needed for the preservation and propagation of the

Trinity River fishery. A 1981 Secretarial Order found that:

> [T]he [Hoopa] and Yurok Indians have rights to fish from the Trinity and Klamath Rivers
> and to adequate water to make their fishing rights meaningful.  These rights are tribal
> assets which the Secretary, as trustee, has an obligation to manage for the benefit of the
> tribes.  The Secretary may not abrogate these rights even if the benefit to a portion of the
> public from such abrogation would be greater than the loss to the Indians. . . . There are
> responsibilities arising from congressional enactments, which are augmented by the
> federal trust responsibility to the Hupa and Yurok tribes, that compel restoration of the
> river's salmon and steelhead resources to pre-project levels.

18.  In 1984, Congress authorized the Secretary to adopt and implement a program to

"achieve the long-term goal of restoring fish and wildlife populations in the Trinity River Basin

to a level approximating that which existed immediately before the start of the construction of

the [TRD] . . . and to maintain such levels."[7]

19.  In 1992, Congress enacted the CVPIA which dramatically altered the structure

and purpose of the CVP. CVPIA Section 3406(a) amended the project purposes of the CVP set

forth in 50 Stat. 844, 850, §2 (Act of August 21, 1937) by adding "mitigation, protection, and

restoration of fish and wildlife" to the purposes of "improving navigation, regulating the flow of

the San Joaquin River and the Sacramento River, controlling floods, providing for storage and

for the delivery of the stored waters thereof, for construction under the provisions of the Federal

---

[6]  Memorandum from Solicitor to Assistant Secretary, Land and Water Resources, Dec. 7, 1979
(the "1979 Opinion")

[7]  Trinity River Basin Fish and Wildlife Management Act of 1984, Pub. L. No. 98-541, 98 Stat.
2721, § 2(a).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 6

reclamation laws of such distribution systems as the Secretary of the Interior deems necessary in connection with lands  for which said stored waters are to be delivered, for the reclamation of arid and semiarid lands and lands of Indian reservations . . .".  In CVPIA Section 3406(b)(23), Congress required the Secretary to take specific actions "in order to meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe, and to meet the fishery restoration goals of the [1984 Act]."[8] The 1984 Act actions identified in section 3406(b)(23) included completion by the Secretary, in consultation with Hoopa, of the Trinity River Flow Evaluation Study ordered by the Secretarial Decision of January 14, 1981; obtaining Hoopa's concurrence in the study results, and implementing the recommendations and associated operating criteria and procedures accordingly. The 1984 Act also requires the Secretary to modernize and increase the effectiveness of the TRH.  CVPIA Section 3406(b)(23) mandates that "[c]osts associated with implementation of this paragraph shall be reimbursable as operation and maintenance expenditures pursuant to existing law" (emphasis added).

20.    In the CVPIA, Congress also required that:  "Upon renewal of any long-term repayment or water service contract providing for the delivery of water from the [CVP], the Secretary shall incorporate all requirements imposed by existing law, including provisions of this title, within such renewed contracts." CVPIA, § 3404(c)(2).  Congress further required environmental review pursuant to NEPA prior to renewal of CVP contracts. CVPIA, § 3404(c)(1), § 3409.

21.    Hoopa's rights to water and fish in the Trinity River, confirmed by Congress, the Secretaries of Interior and Commerce and multiple court cases, are directly threatened by Reclamation's failures to comply with the CVPIA, NEPA, and APA as related to the long-term (permanent) contracts at issue here.  The TRD diverts water that would otherwise flow through the Trinity River Basin and through Hoopa's Reservation.  The diversion of vast amounts of water from the Trinity River Basin through TRD facilities to out-of-basin water contractors

---

[8] Section 3406(b)(23) is reproduced in Exhibit 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 7

directly harms Hoopa and its interests. The TRH is a source of fish to implement Hoopa fishing rights. The Congressional directive of restoring Trinity River fish and wildlife populations to pre-project levels has not yet been achieved. Reclamation's failure to comply with applicable statutory, regulatory, and contractual requirements directly harms Hoopa and its interests in the fish and water resources of the Trinity River.

22. The CVPIA, the 1955 Act, and other provisions of existing law affirmatively protect Hoopa's vested property rights in the Trinity River fishery and the priority that exists for in-basin uses in the Trinity River over out-of-basin diversions to the CVP. Here, Reclamation unlawfully seeks to circumvent and nullify the applicable legal protections by failing in its affirmative legal duty to incorporate the requirements imposed by existing law, including but not limited to the CVPIA and the WIIN Act, into the contracts at issue.

23. Reclamation further seeks to avoid its duty to analyze the environmental impacts of the continued out-of-basin diversions as well as appropriate alternatives to such continued diversions (including the appropriate quantity of such diversions) and appropriate mitigation. In converting contracts to permanent repayment contracts, or renewing contracts in their existing quantities, NEPA requires Reclamation to evaluate alternatives that would implement the conversions in ways that will assure fulfillment of the congressionally mandated Trinity River fish and wildlife restoration, preservation and propagation requirements as well as its federal trust responsibilities to Hoopa.

24. Reclamation's failure to comply with its legal duties affirmatively harms Hoopa. An order of this Court finding Reclamation's acts and omissions unlawful, rescinding the unlawful contracts, and remanding to Reclamation with a direction to comply with its legal responsibilities would redress the injury that Hoopa alleges in this action.

25. Hoopa also incorporates by reference all allegations below in support of its standing.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

## IV.   **PARTIES**

26.     Plaintiff Hoopa Valley Tribe is a federally-recognized Indian tribe located on the Hoopa Valley Reservation which is within Humboldt County, California.  The Trinity River and a stretch of the Klamath River flows through the Reservation.  Hoopa and its members have federal reserved rights to take hatchery and natural fish and a corresponding water right to protect and implement their rights to take hatchery and natural fish in the Trinity and Klamath Rivers.   Hoopa's interests are further described herein.

27.     Defendants in this action are:

A.     United States Bureau of Reclamation is a federal agency within the United States Department of the Interior that has primary management authority over the CVP and TRD and has a fiduciary trust responsibility to protect and preserve Hoopa's reserved rights, as well as an obligation to comply with NEPA in connection with its CVP management actions.  The United States Bureau of Reclamation approved, and is planning to approve, contracts challenged in this litigation without complying with the CVPIA, NEPA, the WIIN Act, or the APA.

B.     David Bernhardt is sued in his official capacity as Secretary of the Interior.  He oversees the Department of the Interior and Bureau of Reclamation and is responsible for the operation of the CVP and TRD, subject to the mandates of the CVPIA and other applicable federal law.

C.     Brenda Burman is sued in her official capacity as the Commissioner of the United States Bureau of Reclamation.

D.     Ernest Conant is sued in his official capacity as Regional Director of the California-Great Basin Region of the United States Bureau of Reclamation.

E.     United States Department of the Interior is a cabinet-level federal agency and the parent agency of the United States Bureau of Reclamation.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 9

## V.     STATUTORY AND REGULATORY BACKGROUND

## THE CENTRAL VALLEY PROJECT IMPROVEMENT ACT (CVPIA)

28.     Section 3402 of the CVPIA states that the purposes of the CVPIA are to:

(a) protect, restore, and enhance fish, wildlife, and associated habitats in the
Central Valley and Trinity River basins of California;

(b) address impacts of the CVP on fish, wildlife, and associated habitats;

(c) improve the operational flexibility of the CVP;

(d) increase water-related benefits provided by the CVP to the State of California
through expanded use of voluntary water transfers and improved water
conservation;

(e) contribute to the State of California's interim and long-term efforts to protect
the San Francisco Bay/Sacramento-San Joaquin Delta Estuary; and

(f) achieve a reasonable balance among competing demands for use of CVP
water, including the requirements of fish and wildlife, agricultural, municipal
and industrial and power contractors.

29.     Section 3406(b)(23) of the CVPIA specifically applies the federal government's
trust responsibilities for Hoopa's Trinity River fishery resources to Reclamation and mandated
implementation of the Trinity River Mainstem Fishery Restoration Program and associated
TRD flow releases according to the terms concurred in by Hoopa in the December 18, 2000,
Record of Decision executed on the Hoopa Valley Reservation by the Secretary and Hoopa's
Chairman.  See Exhibit 1.

30.     Section 3404(c)(1) requires Reclamation to conduct environmental review prior to
renewal of any long-term water contract.  Such appropriate environmental review includes, but
is not limited to, the directive to the Secretary to prepare a programmatic EIS pursuant to
Section 3409 of the CVPIA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 10

31.     Section 3404(c)(2) requires that:  "Upon renewal of any long-term repayment or water service contract providing for the delivery of water from the CVP, the Secretary shall incorporate all requirements imposed by existing law, including provisions of this title, within such renewed contracts.  The Secretary shall also administer all existing, new, and renewed contracts in conformance with the requirements and goals of this title."

## THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA)

32.     NEPA is "our basic national charter for protection of the environment."  40 C.F.R. § 1500.1(a).  Congress directed "that, to the fullest extent possible . . . the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in [NEPA] . . . ."  42 U.S.C. § 4332.

33.     The purposes of NEPA are to: (1) declare a national policy which will encourage productive and enjoyable harmony between man and his environment; (2) promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; and to (3) enrich the understanding of the ecological systems and natural resources important to the Nation.  42 U.S.C. § 4321.  NEPA recognizes that "each person should enjoy a healthful environment" and ensures that the federal government uses all practicable means to "fulfill the responsibilities of each generation as trustee of the environment for succeeding generations" and "assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings."  *Id.* § 4331(b)-(c).

34.     To fulfill these purposes, NEPA requires that:  (1) agencies take a "hard look" at the environmental impacts of their actions before the actions occur, thereby ensuring "that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts," and (2) "the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 11

35.     NEPA requires federal agencies to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2(C).

36.     "Major Federal actions" subject to NEPA include both new and continuing activities. 40 C.F.R. § 1508.18(a).

37.     To determine whether the nature and extent of a proposed action's environmental effects requires preparing an EIS, federal agencies may first prepare an EA.  40 C.F.R. § 1501.4(b)-(c).  If, on the basis of the EA, the agency finds that the proposed action will produce "no significant impact" on the environment, then an EIS need not be prepared.  *Id.* § 1501.4(e).

38.     An agency's NEPA analysis must assess the direct, indirect, and cumulative impacts of its action.  40 C.F.R. § 1508.8.  As part of its NEPA review, an agency is also required to prepare a detailed statement regarding the alternatives to the proposed action.  42 U.S.C. § 4332(2)(C)(iii), (E).  An agency must "[r]igorously explore and objectively evaluate all reasonable alternatives," including a "no-action" alternative.  40 C.F.R. § 1502.14.

### THE ADMINISTRATIVE PROCEDURE ACT (APA)

39.     The APA provides a right to judicial review for any "person suffering legal wrong because of agency action."  5 U.S.C. § 702.  Final agency actions "for which there is no other adequate remedy in a court" are reviewable under the APA.  *Id.* § 704.

40.     Under the APA, a reviewing court shall set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or without observance of procedure required by law.  5 U.S.C. §706.  A reviewing court shall compel agency action unlawfully withheld or unreasonably delayed.  *Id.*

### THE WATER INFRASTRUCTURE IMPROVEMENTS OF THE NATION (WIIN) ACT

41.     In 2016, Congress enacted the WIIN Act. The WIIN Act directs Reclamation to convert existing CVP water service contracts to permanent repayment contracts upon the request of the contractor, under mutually agreeable terms and conditions.  WIIN Act, §4011(a).  The Secretary's administrative implementation of the WIIN Act must be consistent with and may not

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 12

alter existing applicable federal and state laws. WIIN Act, § 4001(a), (b).  WIIN Act § 4012 provides that the Act "shall not be interpreted or implemented in a manner that …(2) affects or modifies any obligation under the Central Valley Project Improvement Act (Public Law 102– 575; 106 Stat. 4706." This includes, but is not limited to: (1) the CVP's environmental restoration purpose established by CVPIA §3406(a): (2) associated contractor cost obligations, particularly regarding the Trinity River; and (3) the CVPIA's §3404(c)(2) mandate to incorporate such terms in renewed contracts.

42.     The WIIN Act shall not be interpreted or implemented in a manner that (1) preempts or modifies any obligation of the United States under state law; (2) affects or modifies any obligation under the CVPIA, with an exception related to Stanislaus River predator management unrelated to this case; (3) overrides, modifies, or amends applicability of the ESA; (4) would cause additional adverse effects on listed fish species beyond the range of effects anticipated to occur to the listed fish species for the duration of the applicable biological opinion, using the best available scientific and commercial data available; or (5) overrides, modifies, or amends any obligation of the Pacific Fisheries Management Council.  WIIN Act, §4012(a).

## VI.      **FACTUAL ALLEGATIONS**

### A.  The TRD's Out-of-Basin Diversions, Which Support the Contracts at Issue, Continue to Imperil Hoopa's Fish and Water Resources in Violation of Law.

43.     Hoopa and its people have lived along the Trinity River, and relied upon its fish resources, since time immemorial.  The United States government located and set aside the Hoopa Valley Reservation, which the Trinity River flows through, on August 21, 1864.  *Mattz v. Arnett*, 412 U.S. 481, 490, fn. 9 (1973); *Short v. United States*, 202 Ct. Cl. 870, 875-980 (1973). On June 23, 1876, President Grant issued an Executive Order formally setting aside the Reservation for "Indian purposes."  *Short*, 202 Ct. Cl. at 877.  Traditional salmon fishing is one

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 13

of the "Indian purposes" for which the Reservation was created. *Parravano v. Babbitt*, 70 F.3d 539, 546 (9th Cir. 1995).

44. In 1864, the United States determined the Reservation a suitable permanent homeland for two principal reasons. First, the Reservation is within the heart of Hoopa's aboriginal lands, which Hupa Indians occupied and fished upon for generations.[9] *Parravano v. Babbitt*, 70 F.3d 539, 546 (9th Cir. 1995). Hupa Indians possessed fishing and hunting rights long before contact with white settlers and their salmon fishery was "not much less necessary to [their existence] than the atmosphere they breathed." *Id.* at 542, *quoting Blake v. Arnett*, 663 F.2d 906, 909 (9th Cir. 1991). Second, the Reservation set aside resources of the Trinity and Klamath rivers for Hupa people to be self-sufficient and achieve a moderate living based on fish. *United States v. Eberhardt*, 789 F.2d 1354, 1359 (9th Cir. 1986).

45. Hoopa's rights entitle Hoopa and its people to take fish from the Trinity and Klamath Rivers for ceremonial, subsistence, and commercial purposes. *Eberhardt*, 789 F.2d at 1359. In 1993, the Interior Solicitor Leshy examined the "history of the [Hoopa] reservation, the Indians' dependence on the Klamath and Trinity River fisheries, the United States' awareness of that dependence, and the federal intent to create the reservation in order to protect the Indians' ability to maintain a way of life, which included reliance on the fisheries. 1993 Solicitor Opinion, p. 3. Solicitor Leshy found: "[T]he Government intended to reserve for the [Hoopa] a fishing right which includes a right to harvest a sufficient share of the resource to sustain a moderate standard of living." *Id.* at p. 21. Hoopa's rights are not satisfied simply by the presence of fish in the river, but rather by the harvesting of an adequate supply of fish by Hoopa's people. *United States v. Washington*, 853 F.3d 946, 958, 965-66 (9th Cir. 2017)*, affirmed per curiam*, 584 U.S. ____ (2018) ("moderate living" standard requires protection of continued supply of fish for the Tribes).

---

[9] Hupa are the people of the federally-recognized Hoopa Valley Tribe.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

46.     In 1955, Congress authorized development of the Trinity River Division (TRD) as a part of the CVP – the extensive system of dams, canals, and reservoirs that divert, store, and regulate water for California's Central Valley.  Through the TRD, Reclamation diverts substantial quantities of water from the Trinity River and sends such water out-of-basin to CVP contractors.  The TRD, which includes Trinity Dam and Lewiston Dam on the Trinity River upstream of the Hoopa Valley Reservation, became operational in 1964, approximately 100 years after the United States set aside the Hoopa Reservation as a permanent homeland for Hupa Indians, reserving Trinity River water and fish for their subsistence and livelihood.  The TRH was an integral part of the TRD to replace fish lost by blocking 109 miles of habitat.

47. Throughout the planning process for the TRD, the Trinity fishery was understood to be a significant concern that needed to be protected:

> Although the two major functions of the [TRD] are to provide an additional supply of irrigation water and to generate hydroelectric energy, there are other important benefits to be gained by the construction and operation of the proposed development.  The present fishery resources of the Trinity River are an economic asset to the Trinity River Basin, as well as to the whole north coastal area, and therefore would require that the proposed development be operated to their advantage.

House Doc. No. 53, 83d Cong., 1st Sess., "Letter from the Secretary of the Interior transmitting the Report and Findings of the Trinity River Division of the Central Valley Project, California, Pursuant to Section 9(A) of the Reclamation Project Act of 1939" at 76.

48.  Both the House and Senate, in their deliberations on the TRD, reported that the fishery resources of the Trinity River are an asset to the Trinity River basin as well as to the whole north coastal area and that the TRD was planned with a view to maintaining and improving fishery conditions.  House Rept. No. 602, 84th Cong., 1st Sess. at 2 (May 19, 1955); Senate Rept. No. 1154, 84th Cong., 1st Sess. at 5.

49.  When Congress authorized the TRD in 1955, Congress recognized the critical importance of the fishery resources of the Trinity River and the need to protect them.  Congress intended the TRD be designed "with a view to maintaining and improving fishery conditions."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 15

*San Luis & Delta-Mendota Water Authority v. Haugrud*, 848 F.3d 1216, 1223 (9th Cir. 2017). Section 2 of the 1955 Act provides that "the Secretary is authorized and directed to adopt appropriate measures to insure the preservation and propagation of fish and wildlife . . . ." Section 2 of the 1955 Act also provides that "not less than 50,000 acre-feet shall be released annually from the Trinity Reservoir and made available to Humboldt County and downstream water users." These two provisos address distinct in-basin releases that have priority over out-of-basin diversions. *See* Solicitor Memorandum M-37030 regarding "Trinity River Division Authorization's 50,000 Acre-Foot Proviso and the 1959 Contract Between the Bureau of Reclamation and Humboldt County" (December 23, 2014).

50. The TRD is the only source of CVP water imported to the Central Valley. The original TRD legislation would have authorized both the TRD and the San Luis Unit (SLU). [10] However the SLU planning report was delayed and the TRD proceeded to authorization in 1955 (Pub. L. 84-386). The SLU was eventually authorized by Public Law 86-488, 74 Stat.156 (June 3, 1960). The water[11] and energy[12] developed by the TRD are integral to the development,

---

[10] Subcommittee on Irrigation and Reclamation of the Committee on Interior and Insular Affairs*, Hearing on H.R. 4663 to authorize the Trinity River division, Central Valley Project*, page 93, 84th Cong., 1st Sess., page 3. (April 13, 1955).

[11] House Report No. 602, 84th Cong., 1st Sess. on H.R. 4664 (May 19, 1955*)* at 4, "Under the plan of development and operation an average of 704,000 acre-feet of Trinity River water would be diverted annually to the Sacramento River Basin . . . [of which] 525,000 acre-feet annually would be available for use on lands of the west side of the San Joaquin Valley."

[12] San Luis Unit, Central Valley Project, California: A Report on the feasibility of Water Supply Development, U.S. Department of the Interior, Bureau of Reclamation GPO 968842 (1956) at 3 and 7-8 "Power from the Trinity River Division is contemplated as the major source for the San Luis Unit pumping requirements." "As stated in . . . [the] January 19, 1955 report, which was adopted by Secretary McKay as his proposed report on the Trinity River Division, assurance of power for San Luis pumping, on advantageous terms would be basic in such arrangements. Since there are no existing arrangements to sell falling water in connection with the Trinity River development, estimates in this report are based on power supplies from Federally-constructed powerplants." 1956 Feasibility Report on the San Luis Unit *Letter from Secretary of the Interior to the President, August 1, 195*6: "The Unit will provide a full water supply to 440,000 acres of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16

construction, and operation of the SLU[13] whose member districts, including the Westlands Water District, have contracts with Reclamation for CVP water service. Those contracts include Contract No. 14-06-200-495A-IR1-P.  Congress conditioned the use of TRD water and energy for the benefit of the SLU and other CVP purposes by establishing first priorities to TRD water for Trinity River fish and wildlife resources and California's North Coast's economy. The Bureau of Reclamation disobeyed or ignored or rejected those priorities for decades.

51.  Construction, operation and maintenance of the TRD and the SLU caused widespread catastrophic environmental impacts in both the Trinity basin and in the Central Valley. Damming the Trinity River and over-diverting water to the Central Valley devastated Trinity basin fish and wildlife and caused economic hardship in North Coast Communities.

52.  The TRD Act and the SLU Act further confirm the nexus between: (1) Hoopa's property rights and interest in the Trinity River and its fishery; and (2) interests purported to be established by Reclamation in contracts with the Westlands Water District and other contractors in the SLU.

53.  In 1979, Interior Solicitor Krulitz explained that the provisos of Section 2 of the 1955 Act limit the integration of the TRD into the CVP and require the Secretary to exercise a priority for use of all TRD water necessary to protect fish and other in-basin needs:

> On occasion the Congress has specifically limited the Secretary's discretion in meeting the general CVP priorities.  For example, in authorizing the Trinity River Division of the CVP in 1955, Congress specifically provided that in-basin flows (in excess of a statutorily prescribed minimum) determined by the Secretary to be necessary to meet in-basin needs take precedence over needs to be served by out-of-basin diversion.  See Pub.

---

land along the west side of the San Joaquin valley. Most of this area is presently irrigated from ground water, but due to the rapidly lowering water levels, it is estimated that less than 150,000 acres can be sustained in permanent irrigated agriculture under present conditions.

[13]  *Id.* at 93. Congressman Sisk of California: "This particular project, the Trinity and the San Luis project, have already been considered as definite parts of and an integral part of and feature of the Central Valley project from its very inception."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 17

L. No. 84-386, § 2. In that case, Congress' usual direction that the Trinity River Division be integrated into the overall CVP, set forth at the beginning of section 2, is expressly modified by and made subject to the provisos that follow giving specific direction to the Secretary regarding in-basin needs.

Memorandum from Solicitor to Assistant Secretary, Land and Water Resources, Dec. 7, 1979.

54.   Contrary to the intent of Congress, the TRD development, operations, and resulting out-of-basin water diversions decimated fish populations including those required to fulfill Hoopa reserved fishing rights.  The TRD diverted an average of 88% of the annual inflow out of the Trinity River and into the Sacramento River Basin during its first ten years of operation. *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 861 (9th Cir. 2004).  The TRD also permanently eliminated fish access to 109 miles of habitat upstream of Lewiston Dam previously used by anadromous fish for holding, spawning, and rearing. Within a decade of the TRD's completion, salmonid populations dramatically decreased.  In 1980, the U.S. Fish and Wildlife Service estimated that the Trinity River fish population suffered a reduction of 60% to 80% and fishery habitat loss of 80% to 90%. *Id.* at 862-63.

55.   The reduction in salmon populations had, and continues to have, a devastating impact on Hoopa.  In 1981, relying on an environmental study, the authority provided by the 1955 Act, § 2, and the federal trust obligation to protect Hoopa's reserved rights, the Secretary of the Interior ordered an increase in annual flows released from the TRD to the Trinity River downstream of Lewiston Dam.  1981 Secretarial Order.  The Secretary confirmed that mitigation is required to provide fish harvest opportunities to Hoopa for both subsistence and commercial purposes and that flow is critical to restoration, preservation, and propagation of the Trinity River fishery resource.

56.   In 1984, Congress affirmed and authorized the Secretary's restoration goal in the Trinity River Basin Fish and Wildlife Management Act ("1984 Act"), Pub. L. No. 98-541, 98 Stat. 2721.  Congress found that "the Secretary requires additional authority to implement a basin-wide fish and wildlife management program in order to achieve the long-term goal of restoring fish and wildlife populations in the Trinity River Basin to a level approximating that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 18

which existed immediately before the start of the construction of the Trinity River division."
1984 Act, § 1(6).  Congress directed the Secretary to develop and implement a fish and wildlife
management program for the Trinity River Basin designed to restore the fish and wildlife
populations in such basin to the levels approximating those which existed immediately before the
start of the construction [of the TRD] and to maintain those levels."  1984 Act, § 2(a).  The 1984
Act directed the "design, construction, operation and maintenance of facilities to—(A)
rehabilitate fish habitats in the Trinity River between Lewistown Dam and Weitchpec; (B)
rehabilitate fish habitats in the tributaries of such river below Lewiston Dam and in the south
fork of such river; and (C) modernize and otherwise increase the effectiveness of the Trinity
River Fish Hatchery."

57.  In 1992, Congress enacted the CVPIA which, among other things, sought "to protect,
restore, and enhance fish, wildlife, and associated habitats in the Central Valley and Trinity
River basins . . . ."  CVPIA, § 3402(a).  In Section 3406(b)(23), Congress required actions to
"meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe,
and to meet the fishery restoration goals of the [1984 Act]."  Section 3406(b)(23) required
Hoopa's concurrence on certain flow measures proposed for implementation.

58.  Subject to certain exceptions not relevant to this case, CVPIA section 3404(a)
prohibited any new contracts for CVP water for any purpose other than fish and wildlife before .
. . the provisions of subsections 3406(b)-(d) . . . were met." Section 3406(b) enumerated twenty-
three fish and wildlife restoration activities subject to that requirement. Section 3406(b)(23)[14]

59.  Congress, in CVPIA section 3404(c)(2), requires that:  "Upon renewal of any long-
term repayment or water service contract providing for the delivery of water from the [CVP], the
Secretary shall incorporate all requirements imposed by existing law, including provisions of this
title, within such renewed contracts."  CVPIA, § 3404(c)(2).   The Secretary shall also administer

---

[14] The WIIN Act amended CVPIA to delete two programs--(b)(14) and (18)--under 3406(b),
resulting in 3406(b)(23) being re-designated as 3406(b)(21) WIIN Act section 4010(g)(1)(B).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 19

all existing, new, and renewed contracts in conformance with the requirements and goals of this title.  *Id.*  Congress further required environmental review pursuant to NEPA prior to renewal of CVP contracts.  CVPIA, § 3404(c)(1), § 3409.

60.  In 1996, Congress enacted the Trinity River Basin and Wildlife Management Reauthorization Act (the "1996 Act").  Pub. L. No. 104-143, 110 Stat. 1338 (1996).  The 1996 Act amended the scope of the 1984 Act's mandate to include rehabilitation of fish habitat "in the Klamath River downstream of the confluence with the Trinity River."  1996 Act, § 3(b).  The 1996 Act also confirmed that "Trinity Basin fisheries restoration is to be measured not only by returning adult anadromous spawners, but by the ability of dependent tribal, commercial, and sport fisheries to participate fully, through enhanced in-river and ocean harvest opportunities, in the benefits of restoration."  1996 Act, Section 2.

61.  In 2000, Interior Secretary Babbitt signed a Record of Decision on Trinity River Mainstem Fishery Restoration (the "TRROD") which provided for flows intended to restore fishery habitat in the Trinity River downstream of Lewiston Dam.  Secretary Babbitt found that the Preferred Alternative was the "action which best meets the statutory and trust obligation [to Hoopa] of the Department to restore and maintain the Trinity River's anadromous fishery resources."  TRROD, p. 2.  In section 3406(b)(23) of the CVPIA, Congress required Hoopa's concurrence to make the TRROD effective, expressly establishing Hoopa's role as a co-manager of the Trinity River resources.

62.  The United States government, including the Department of the Interior, and its agencies, have a trust obligation to preserve, protect, and to restore Hoopa's rights.  The Supreme Court has long recognized "the distinctive obligation of trust" that the federal government owes to Indian tribes and federally protected rights.  *Seminole Nation v. United States*, 316 U.S. 286 (1942).  In carrying out its obligations to the Indians, the United States is charged with "moral obligations of the highest responsibility and trust."  *Id.* at 296-97.  This trust

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 20

obligation extends to any federal government action affecting Indians or their rights.  *Pyramid Lake Paiute Tribe of Indians v. United States Dep't of Navy*, 898 F.2d 1410, 1420 (9th Cir. 1990).

63.  The Ninth Circuit Court of Appeals has specifically recognized that the federal government is trustee of the Hoopa Valley Tribe's federal reserved fishing and water rights. *Parravano*, 70 F.3d at 546;  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1214-15 (9th Cir. 2000).

64.  In 1995, Reclamation's Regional Solicitor explained in a memorandum to the Bureau of Reclamation's Mid-Pacific Regional Director that "Reclamation must exercise its statutory and contractual authority to the fullest extent to protect [Hoopa's] tribal fisheries and tribal water rights."  Memorandum on "Certain Legal Rights and Obligations Related to the U.S. Bureau of Reclamation, Klamath Project for Use in Preparation of the Klamath Project Operations Plan" (July 25, 1995).  That direction applies no less to Reclamation's management actions relating to the Trinity River.

65.  Congress has specifically recognized the federal government's trust obligation to Hoopa and has affirmatively legislated direct protection of Hoopa' rights and interests in Trinity River fish and water resources in Section 2 of the 1955 Act, the 1984 Act, and Section 3406(b)(23) of the CVPIA.  "We also find significant section 3406(b)(23)'s reference to the Hoopa Valley Tribe – and its exclusion of all other tribes."  *Haugrud*, 848 F.3d at 1232.

66.  Since the beginning of the TRD, Congress has mandated that the Interior Department, including Reclamation, act to ensure the preservation and protection of fish populations in the Trinity River.  In addition to its general fiduciary trust obligation to protect and preserve Hoopa's reserved rights, Congress imposed a specific requirement on the Interior Department in the 1955 Act to mitigate TRD impacts on Hoopa's fishery upstream of Lewiston. In addition, the 1984 Act directed the Secretary to develop and implement a program that would restore Trinity River fish populations to pre-project (TRD) levels and to modernize and increase the effectiveness of the TRH.  In 1992, Congress affirmatively recognized the federal

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 21

government's specific trust obligation to Hoopa and protection of its fishery resource.  In the 1996 Act, Congress confirmed that the purpose of the program authorized by the 1984 Act was not merely to preserve fish for preservation's sake, but to provide a harvestable population of salmon for Hupa people as well as other tribal and non-tribal fishers.  Congress and the Secretary have repeatedly and explicitly recognized the specific trust obligation that exists regarding protection of Hoopa's trust fishing resource from impacts of the TRD.

67.  Yet, today, fish populations are not at pre-project levels nor anything close to them.  SONCC Coho salmon, a population that includes Klamath and Trinity River Coho, was estimated in 1940 to range between 150,000 and 400,000 naturally spawning fish annually.  *See* Threatened Status for SONCC ESU of Coho Salmon, 62 Fed. Reg. 24588, 24588 (May 6, 1997) ("Listing Notice").  In 1997, NMFS concluded that "Coho populations in this ESU are very depressed, currently numbering approximately 10,000 naturally produced adults." *Id.*  The perilous situation of the SONCC Coho salmon prompted NMFS in 1997 to list the fish under the ESA as threatened.  In listing the Coho, NMFS noted that "water diversions" and "water withdrawals" for irrigation were "major activities responsible for the decline of Coho salmon in Oregon and California." *Id.* at 24,592.  SONCC coho remain listed as threatened under the ESA due to their continued depressed populations.

68.  In 1957, the Secretary concluded that the 1955 Act's mandate for preservation and propagation of Trinity River basin fish and wildlife required, as an authorized feature of the TRD, the construction and operation of the Trinity River Hatchery (TRH) near Lewiston, California, to mitigate for loss of anadromous fish production in 109 miles of stream habitat permanently blocked by TRD facilities.

69.  Although the TRH was authorized and constructed as a feature of the TRD to mitigate those habitat impacts, Reclamation failed to oversee and manage the performance of the State of California's Department of Fish and Wildlife with whom it had contracted to run the TRH. The condition of the TRH has deteriorated during the decades of mismanagement.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 22

Reclamation has failed to fulfill the mandates of the 1984 Act to modernize and increase the effectiveness of the TRH (Public Law 98-541 §2(a)(1)(C)) or require CVP contractors to pay the cost pursuant to CVPIA section 3406(b)(23).

70. A 2012 California Hatchery Review Report reported, with regard to the Trinity River, that:

> Mitigation goals for lost adult production were determined from pre-project studies of anadromous fish population in the basin.  The USFWS and CDFG (1956) estimated that 5,000 coho; 3,000 spring Chinook; 8,000 summer Chinook and 24,000 fall Chinook; and 10,000 steelhead (no run timing was designated) passed above the Lewiston Dam site prior to its construction.  Total annual adult production goals (catch plus escapement) for TRH [Trinity River Hatchery] were further defined in 1980 to be 7,500 coho, 6,000 spring Chinook, 70,000 fall Chinook and 22,000 steelhead (Frederickson et al. 1980).  Escapement goals to the hatchery were further defined in 1983 as 2,100 coho, 3,000 spring Chinook, 9,000 fall Chinook and 10,000 steelhead (USFWS 1983).

71. Average returns of hatchery fish to Trinity River above Willow Creek in recently completed brood cycles (run years 2015-2018) fall far short of the 1983 goals for all species (which goals still less than the estimated pre-project escapement levels).  Significantly an average of only 6,200 fall Chinook returned to TRH between 2010 and 2019.  This has substantially deprived Hoopa of its right to take fish.

72. In 2004, the Ninth Circuit Court of Appeals recognized that:  "Restoration of the Trinity River fishery, and the ESA-listed species that inhabit it . . . . are unlawfully long overdue."  *Westlands*, 376 F.3d at 878.  Today, Hupa people are still not able to harvest meaningful quantities of fish to support their families or to provide the moderate livelihood based on fish that was promised to them by the federal government long before development of the TRD.

B.     In Approving Conversion of the CVP Contracts to Permanent Contracts, Reclamation Failed to Comply With CVPIA Section 3404(c)(2).

73. Reclamation must comply with its legal responsibilities relating to restoration and preservation of the Trinity River fishery, specifically including CVPIA section 3404(c)(2) and NEPA.  In addition to conducting appropriate environmental review, Reclamation must include

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 23

all existing requirements of law relating to the Trinity River fishery restoration program and the TRH and payments therefore, as well as the in-basin priority of Trinity River flows over out-of-basin diversions, in the converted contracts.

74. On February 28, 2020, Reclamation approved the conversion of 14 CVP contracts into permanent water service contracts including a contract with Westlands Water District, Contract No. 14-06-200-495A-IRI-P in the amount of 1,150,000 acre-feet per year.  A table of all fourteen contract conversions approved on February 28, 2020 is found at Exhibit 2 to this Complaint.

75. Reclamation is likewise believed to be in the process of converting an additional 26 CVP contracts, which are shown in a table on Exhibit 3 to this Complaint.

76. The permanent contracts approved by Reclamation violate CVPIA section 3404(c)(2) because they fail to incorporate the requirements imposed by existing law, including the fishery restoration provisions of the CVPIA and associated payment obligations, within such renewed contracts.  Section 3404(c)(2) requires compliance with and incorporation of fishery restoration requirements, including those applicable to the Trinity River, in all long-term contracts.

77. The permanent contracts also fail to include terms subordinating the out-of-basin water deliveries to CVP contractors to in-basin flows that have legal priority pursuant to the CVPIA and the 1955 Act.  Failure to affirmatively incorporate the applicable legal requirements relating to protection of the Trinity River and Hoopa's trust resources into the contracts is a clear and express violation of CVPIA section 3404(c)(2).

78. Contract provisions approved by Reclamation in the converted contracts are in direct conflict with CVPIA and other existing legal requirements relating to Trinity River flows and fishery restoration measures.  For example, paragraph 37 of the converted contract with Westlands Water District states:

> By entering into this Contract, the Contractor does not waive its rights to contest the validity or application in connection with the performance of the terms and conditions of this Contract of any Federal law or regulation; Provided, That the Contractor agrees to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 24

comply with the terms and conditions of this Contract unless and until relief from application of such Federal law or regulation to the implementing provision of the Contract is granted by a court of competent jurisdiction.

This language is in direct conflict with the requirement of Section 3404(c)(2) of the CVPIA that expressly requires full incorporation of the existing requirements of federal law, which would include the CVPIA fishery restoration measures and legal requirements confirming priority of in-basin flows pursuant to the CVPIA and 1955 Act over out-of-basin diversions.

79.   The contracts also unlawfully fail to explicitly include terms regarding CVP contractors' payment obligations regarding implementation of the CVPIA's fishery restoration programs.

80.   Reclamation is legally required to operate the TRD and CVP in a manner that subordinates out-of-basin uses of TRD water to the Trinity River's in-basin needs.  Reclamation is attempting to write those priorities out of the law by enacting permanent contracts that fail to recognize and incorporate those applicable priorities and legal requirements as contract terms. This expressly violates CVPIA section 3404(c)(2) and renders the contract conversions unlawful.

81.   Hoopa seeks to prevent further deleterious impacts to its fishery from Reclamation's unlawful contracting actions.  Reclamation has violated Section 3404(c)(2) of the CVPIA by ignoring and failing to comply with its mandatory duty to "incorporate all requirements imposed by existing law, including provisions of this title [the CVPIA], within such renewed contracts." This is no minor violation; Section 3404(c)(2) is designed to ensure that CVP contracts, and any out-of-basin diversions authorized therein, will remain expressly subject to the fishery restoration requirements and the in-basin flow priorities contained in existing laws including the 1955 Act, the CVPIA, and the TRROD.  Reclamation's attempt to execute permanent water contracts without these required terms is an unlawful effort to evade the established fishery restoration measures and in-basin priorities affirmatively designed to protect Hoopa and the Trinity River resources it relies upon.  The contracts, as approved, are unlawful.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 25

82.     Hoopa wrote to Regional Director Conant on December 16, 2019 and on March 24, 2020 pointing out the need to incorporate appropriate provisions into the contracts at issue. These entreaties were ignored, contrary to 43 USC 485h(f). Further, the contracts lack validation, which is required by 43 U.S.C. § 511.

C.     In Approving Conversion of the CVP Contracts to Permanent Contracts, Reclamation Failed to Comply With NEPA.

83.  Hoopa seeks to enforce Reclamation's mandatory obligation to evaluate the environmental impacts of its water contracting actions pursuant to the CVPIA and NEPA and to evaluate alternatives to its actions that would better protect the imperiled Trinity River resources that are impacted by the out-of-basin diversions resulting from the contracts.

84.  In 1999, Reclamation issued a programmatic EIS pursuant to the CVPIA.  However, that programmatic EIS did not evaluate the environmental effects of converting Reclamation's existing CVP contracts to permanent contracts, but provided that future NEPA review would occur at the level of specific actions, including new contracts and contract renewals consistent with NEPA's tiering provisions.

85.  In 2000, following consultation with Reclamation pursuant to section 7 of the ESA (16 U.S.C. § 1536), the United States Fish and Wildlife Service released a biological opinion for the implementation of the CVPIA and the continued operation and maintenance of the CVP, which stated that:

> Once the long-term contract renewal negotiations are completed, the renewals will be subject to a separate, tiered analysis that is consistent with the NEPA tiering in the PEIS. No contracts will be renewed until the appropriate environmental review has been completed.  Reclamation will consult either formally or informally with the Service before executing a contract.  The site specific, tiered analysis will address direct and indirect effects of contract renewal.

86.  Reclamation has not prepared an EIS, EA, or otherwise complied with NEPA in any respect prior to making the contracts at issue permanent and its failure to comply with NEPA is ongoing with respect to contracts that remain in the process of conversion to permanent.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 26

87.  The out-of-basin diversion of water to the Central Valley from the Trinity River basin, which would otherwise flow through the Trinity River, significantly impacts the fish, water, environmental, and socioeconomic resources of the Trinity River basin.  The conversion of CVP contracts to permanent contracts will perpetuate these adverse impacts.  Locking in the contracts for all time without environmental analysis of any kind violates NEPA.

88.  The importance of the Trinity River and its resources to Hoopa and to the fulfillment of the Hoopa Valley Reservation as a permanent homeland for Hoopa and its people, the recognition and confirmation by Congress of the federal government's trust responsibilities to Hoopa, and the imperiled status of the Trinity River fishery provide unique characteristics that support NEPA review.  40 C.F.R. § 1508.27(b)(3).

89.  The conversion and locking-in of the water contracts is highly controversial, which supports NEPA review.  40 C.F.R. § 1508.27(b)(4).

90.  Locking-in the contracts as permanent contracts without NEPA review forecloses inquiry into possible future changes in climate and to species status and possible ways to mitigate impacts resulting from such changes.  40 C.F.R. § 1508.27(b)(5).

91.  Reclamation's conversion of each contract establishes a precedent for future actions with significant effects and represents a decision in principle about future consideration, which supports NEPA review.  40 C.F.R. § 1508.27(b)(6).  Reclamation is considering conversion of dozens of CVP contracts.  Each contract conversion establishes a precedent for future actions with significant effects.

92.  Each contract conversion is related to the conversion of the dozens of other CVP contracts, which demand water supply from sources that include the Trinity River, in addition to other past, ongoing, and reasonably foreseeable future actions that affect the Trinity River Basin and its resources.  The cumulative impact warrants NEPA review.  40 C.F.R. § 1508.27(b)(7).

93.  Salmon are not only a source of subsistence and economy for Hoopa, but are also a cultural and spiritual resource.  In addition, salmon species in the Trinity River are in imperiled

1   condition. Some, such as SONCC coho, are already listed under the Endangered Species Act
2   while others, such as Chinook species, are being reviewed for possible listing. These factors
3   further support NEPA review. 40 C.F.R. § 1508.27(b)(8), (9).

4   94. The conversion of the contracts also separately threatens violations of Federal and
5   State laws and requirements imposed for the protection of the environment including Section
6   3404(c)(2) of the CVPIA and the fish protection measures and in-basin flow requirements found
7   in the CVPIA, the TRROD, and the 1955 Act. As discussed herein, the converted contracts do
8   not incorporate all requirements imposed by existing law in violation of Section 3404(c)(2). The
9   locking-in of the contracts also threatens the requirements of the 1984 Act as well as the ESA.
10  40 C.F.R. § 1508.27(b)(10).

11  95. Reclamation's failure to prepare an EIS or EA on the conversion of the contracts
12  constitutes failure to proceed in the manner required by NEPA because entering into each
13  contract was a major federal action significantly affecting the quality of the human environment.
14  42 U.S.C. § 4332(2)(C). Reclamation's failure to prepare an EIS or EA on the conversion of the
15  contracts also constitutes agency action unlawfully withheld or unreasonably delayed.

16  96. Reclamation's failure to prepare an EIS or an EA foreclosed its analysis of
17  alternatives to the proposed action in violation of NEPA. 40 C.F.R. § 1502.14(a). In light of the
18  continuing failure to meet the goals and requirements of the 1984 Act and to restore the Trinity
19  River fishery to pre-TRD levels, and given the confirmed impact that out-of-basin water
20  diversions have on Trinity River resources, the failure to consider alternatives to permanently
21  locking-in the water diversions to CVP contractors (as opposed to alternatives that either reduce
22  or otherwise mitigate the continuing effects of such diversions on environmental resources) is
23  unlawful.

**VII.   CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Violations of CVPIA and the APA.**

24
25
26

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 28

97.  Hoopa re-alleges, as if fully set forth herein, each and every allegation set forth in this Complaint.

98.  Reclamation violated and is violating Section 3404(c)(2) of the CVPIA and the APA by executing or otherwise approving the conversion of CVP renewal contracts into permanent water service contracts without expressly incorporating all requirements imposed by existing law, specifically including requirements imposed by the 1955 Act, 1984 Act, CVPIA, and TRROD, which impose specific fishery restoration measures and payment obligations and which confirm the in-basin priority of Trinity River flow releases over out-of-basin diversions to the Central Valley contractors, as terms within such contracts. Specifically, the contracts fail to (1) secure recognition of fishery restoration as a project purpose; (2) memorialize in the contract the O&M cost obligation under CVPIA §3406 (b)(23); (3) specify the 2000 TRROD, the 2017 ROD and 1955 Act Proviso 2 water as expressly acknowledged and accepted by the contractors; (4) memorialize the 1979 Krulitz opinion confirming Trinity Basin priority; (5) address TRH failures and mismanagement; and (6) declare TRH modernization and improved effectiveness is an O&M expense per CVPIA §3406 (b)(23).

99.  Reclamation's actions and omissions, specifically including their failure to comply with the CVPIA as described herein, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law and are reviewable in this Court under the APA, 5 U.S.C. §§ 702 - 706.

100.  Due to Reclamation's violations of the CVPIA and the APA, Reclamation's approvals of the contracts are unlawful, and the contracts are legally invalid and must be set aside by this Court.

### SECOND CLAIM FOR RELIEF

### Violations of NEPA and APA

101.  Hoopa re-alleges, as if fully set forth herein, each and every allegation set forth in this Complaint.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 29

102.  Reclamation's execution and/or approval of the conversion of CVP renewal contracts into permanent water service contracts constitutes a major federal action or actions that will significantly affect the quality of the human environment.  Reclamation has a duty under NEPA to prepare an EIS or an EA before approving conversion of the contracts.

103.  Reclamation failed to prepare an EIS or an EA before approving the contracts in violation of NEPA.

104.  Reclamation failed to develop or consider alternatives to the proposed contract conversion actions in violation of NEPA.

105.  Reclamation's approvals of the conversion of the CVP contracts to permanent water service contracts without any compliance with NEPA is unlawful under NEPA and the APA.

106.  Reclamation's failure to comply with NEPA prior to its execution and/or approval of the contract conversions constitutes arbitrary and capricious agency action, is an abuse of discretion, and is contrary to law and procedures required by law and are reviewable in this Court under the APA.  5 U.S.C. §§ 702 - 706.

107.  Due to Reclamation's violations of NEPA and the APA, Reclamation's approval of the contracts is unlawful, and the contracts are legally invalid and must be set aside by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Hoopa respectfully requests that this Court:

A.      Find and declare that Reclamation has failed to comply with Sections 3404(c)(2) of the CVPIA by executing or otherwise approving the conversion of CVP renewal contracts into permanent water service contracts without expressly incorporating all requirements imposed by existing law, specifically including requirements imposed by the 1955 Act, 1984 Act, CVPIA, and TRROD, which impose specific fishery restoration measures and payment obligations and which

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 30

1    confirm the in-basin priority of Trinity River flow releases over out-of-basin

2    diversions to the Central Valley contractors, as terms within such contracts;

3    B.    Find and declare that Reclamation's failure to prepare an EIS or an EA to assess,

4    disclose, and consider the environmental effects of the contract conversions, and

5    alternatives to the contract conversions, violates NEPA;

6    C.    Find and declare that Reclamation's approvals of the contract conversions are

7    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

8    law, and without observance of procedure required by law;

9    D.    Vacate, set aside, rescind, and nullify all of Reclamation's contract conversions

10    challenged herein;

11    E.    Enjoin Reclamation from taking any action pursuant to the contract conversions,

12    until Reclamation has fully complied with NEPA and Section 3404(c)(2) of the

13    CVPIA;

14    F.    Enjoin Reclamation from converting any other contracts absent full compliance

15    with CVPIA Section 3404(c)(2) and NEPA;

16    G.    Grant other preliminary and/or permanent injunctive relief;

17    H.    Award Hoopa its costs of litigation, including reasonable attorneys' fees; and

18    I.    Grant Hoopa such additional relief as the Court may deem just and proper.

19    DATED this 13th day of August 2020.

20

21    MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE

22    ___/s/ Thomas P. Schlosser_____
       Thomas P. Schlosser WSBA #06276
23    Attorneys for Plaintiff Hoopa Valley Tribe

24

25

26

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  - 31

# EXHIBIT 1

CVPIA Section 3406(b)(23)

Section 3406.  Fish, Wildlife, and Habitat Restoration

**...**

(b) Fish and Wildlife Restoration Activities.--The Secretary, immediately upon the enactment of this title, shall operate the Central Valley Project to meet all obligations under state and federal law, including but not limited to the federal Endangered Species Act, 16 U.S.C. s 1531, et seq., and all decisions of the California State Water Resources Control Board establishing conditions on applicable licenses and permits for the project. The Secretary, in consultation with other State and Federal agencies, Indian tribes, and affected interests, is further authorized and directed to: . . .

(23) In order to meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe, and to meet the fishery restoration goals of the Act of October 24, 1984, Pub. L. 98-541, provide through the Trinity River Division, for water years 1992 through 1996, an instream release of water to the Trinity River of not less than 340,000 acre-feet per year for the purposes of fishery restoration, propagation, and maintenance and,

(A) by September 30, 1996, the Secretary, after consultation with the Hoopa Valley Tribe, shall complete the Trinity River Flow Evaluation Study currently being conducted by the U.S. Fish and Wildlife Service under the mandate of the Secretarial Decision of January 14, 1981, in a manner which insures the development of recommendations, based on the best available scientific data, regarding permanent instream fishery flow requirements and Trinity River Division operating criteria and procedures for the restoration and maintenance of the Trinity River fishery; and

(B) not later than December 31, 1996, the Secretary shall forward the recommendations of the Trinity River Flow Evaluation Study, referred to in subparagraph (A)  of this paragraph, to the Committee on Energy and Natural Resources and the Select Committee on Indian Affairs of the Senate and the Committee on Interior and Insular Affairs and the Committee on Merchant Marine and Fisheries of the House of Representatives. If the Secretary and the Hoopa Valley Tribe concur in these recommendations, any increase to the minimum Trinity River instream fishery releases established under this paragraph and the operating criteria and procedures referred to in subparagraph (A)  shall be implemented accordingly. If the Hoopa Valley Tribe and the Secretary do not concur, the minimum Trinity River instream fishery releases established under this paragraph shall remain in effect unless increased by an Act of Congress, appropriate judicial decree, or agreement between the Secretary and the Hoopa Valley Tribe. Costs associated with implementation of this paragraph shall be reimbursable as operation and maintenance expenditures pursuant to existing law.

If the Secretary and the State of California determine that long-term natural fishery productivity in all Central Valley Project controlled rivers and streams resulting from implementation of this section exceeds that which existed in the absence of Central Valley Project facilities, the costs of implementing those measures which are determined to provide such enhancement shall become credits to offset reimbursable costs associated with implementation of this subsection.

# EXHIBIT 2

**Contract Conversions Approved on February 28, 2020**

| Contractor | Contract No. | Acre-Feet Per Year |
|---|---|---|
| Westlands Water District | 14-06-200-495A-IRI-P | 1,150,000 |
| Westlands Water District Distribution District No. 1 (Broadview Assignment) | 14-06-200-8092-XXX | 27,000 |
| Westlands Water District Distribution District No. 1 (Centinella Assignment) | 7-07-20-WO55-XXX | 2,500 |
| Westlands Water District Distribution District No. 2 (Mercy Springs Partial Assignment) | 14-06-200-3365A-XXX-C | 4,198 |
| Santa Clara Valley Water District (and Westlands Water Dist. No. 1 Mercy Springs 2-Way Partial Assignment) | 14-06-200-3365A-XXX-B | 6,260 |
| Westlands Water District Distribution District No. 1 (Widren Assignment) | 14-06-200-8018-XXX | 2,990 |
| East Bay Municipal Utility District | 14-06-200-5183A-LTR1-P | 433,000 |
| City of Folsom | 6-07-20-W1372B-P | 7,000 |
| City of Roseville | 4-06-200-3474A-IRI-P | 32,000 |
| Placer County Water Agency | 14-06-200-5082A-IRI-P | 35,000 |
| Sacramento County Water Agency | 14-06-200-5198B-IR1-P | 30,000 |
| Sacramento County Water Agency | 6-07-20-W1372-P | 15,000 |
| Sacramento Municipal Utility District | 14-06-200-5198A-IR1-P | 30,000 |
| San Juan Water District | 6-07-20-W1373-LTR1-P | 24,200 |

# EXHIBIT 3

**Contracts in Process of Conversion**

| Contractor | Contract No. | Acre-Feet Per Year |
|---|---|---:|
| 4-M Water District | 14-06-200-5272A-P | 5,700 |
| Colusa County Water District | 1-07-20-W0220-P | 5,964 |
| Colusa County Water District | 14-06-200-304-A-P | 62,200 |
| Corning Water District | 14-06-200-6575-P | 23,000 |
| Dunnigan Water District | 14-06-200-399-A-P | 19,000 |
| Glenn Valley Water District | 0-07-20-W0219-P | 1,730 |
| Glide Water District | 7-07-20-W0040-P | 10,500 |
| Kanawha Water District | 14-06-200-466-A-P | 45,000 |
| Proberta Water District | 14-06-200-7311-P | 3,500 |
| Davis Water District | 14-06-200-6001A-P | 4,000 |
| Cortina Water District | 0-07-20-W0206-P | 1,700 |
| La Grande Water District | 7-07-20-W0022-P | 5,000 |
| La Grande Water District | 0-07-20-W0190-P | 2,200 |
| Hothouse Water District | 1-07-20-W0224-P | 2,450 |
| City of West Sacramento | 0-07-20-W0187-P | 23,600 |
| Orland-Artois Water District | 14-06-200-8382A-P | 53,000 |
| City of Shasta Lake | 4-07-20-W1134-P | 4,400 |
| Shasta County Water Agency | 14-06-200-3367A-P | 1,022 |
| Mountain Gate Community Services District | 14-06-200-6998-P | 1,350 |
| City of Redding | 14-06-200-5272A-P | 6,140 |
| Bella Vista Water District | 14-06-200-851A-P | 24,578 |
| Shasta Community Services Dist. | 14-06-200-862A-P | 1,000 |
| Stony Creek Water District | 2-07-20-W0261-P | 3,345 |
| Stockton East Water District | 4-07-20-W0329-P | 75,000 |
| Central San Joaquin Water Conservation District | 4-07-20-W0330-P | 80,000 |

JS-CAND 44 (Rev. 07/19)

Case 3:20-cv-05630-RS Document 110 Filed 08/28/20 Page 45 of 46
Case 1:16-cv-00307-DAD-SKO Document 124 Filed 08/20/20 Page 40 of 41

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Hoopa Valley Tribe

### DEFENDANTS
U.S. Bureau of Reclamation; David Bernhardt, as Secretary of the Interior; Brenda Burman, as Reclamation Commissioner; Ernest Conant, as Reclamation California-Great Basin Regional Director; U.S. Dep't of Interior

**(b)** County of Residence of First Listed Plaintiff    Humboldt
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas P. Schlosser; Morisset, Schlosser, Jozwiak & Somerville, 811 1st Ave., #218, Seattle, WA 98104; 206-386-5200

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **LABOR** | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 710 Fair Labor Standards Act | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 720 Labor/Management Relations | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 740 Railway Labor Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 751 Family and Medical Leave Act | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 790 Other Labor Litigation | 861 HIA (1395ff) | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | 791 Employee Retirement Income Security Act | 862 Black Lung (923) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | **IMMIGRATION** | 863 DIWC/DIWW (405(g)) | 490 Cable/Sat TV |
| 195 Contract Product Liability | | | 462 Naturalization Application | 864 SSID Title XVI | 850 Securities/Commodities/ Exchange |
| 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 865 RSI (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | 440 Other Civil Rights | **HABEAS CORPUS** | | **FEDERAL TAX SUITS** | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS–Third Party 26 USC § 7609 | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | | 896 Arbitration |
| 240 Torts to Land | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 448 Education | 540 Mandamus & Other | | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer | ☐ 8 Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Central Valley Project Improvement Act, Section 3404(c)(2); NEPA, 42 USC 4321 et seq; APA, 5 USC 702-706

Brief description of cause:
Unlawful agency action; failure to comply with CVPIA Section 3404(c)(2) and NEPA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE                               DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*    ☐ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☒ EUREKA-MCKINLEYVILLE

DATE    Aug. 12, 2020    SIGNATURE OF ATTORNEY OF RECORD    /s/ Thomas P. Schlosser

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.  a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

  (1)  United States plaintiff. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

  (2)  United States defendant. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

  (3)  Federal question. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

  (4)  Diversity of citizenship. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.  Origin.** Place an "X" in one of the six boxes.

  (1)  Original Proceedings. Cases originating in the United States district courts.

  (2)  Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

  (3)  Remanded from Appellate Court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

  (4)  Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

  (5)  Transferred from Another District. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

  (6)  Multidistrict Litigation Transfer. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

  (8)  Multidistrict Litigation Direct File. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

  Please note that there is no Origin Code 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.  Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.