PAUL E. SALAMANCA, Deputy Assistant Attorney General
Environment & Natural Resources Division
JEFFREY S. THOMAS, Trial Attorney (VA Bar No. 86439)
Natural Resources Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-3553
Facsimile: (202) 305-0506
jeffrey.thomas2 @usdoj.gov
*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| HOOPA VALLEY TRIBE, | Case No. 3:20-cv-05630-RS |
| Plaintiff, | **FEDERAL DEFENDANTS' MOTION TO DISMISS** |
| v. | Date: Thursday, December 10, 2020 |
| UNITED STATES BUREAU OF RECLAMATION; DAVID BERNHARDT, in his official capacity as Secretary of the Interior; BRENDA BURMAN, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST CONANT, in his official capacity as U.S. Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR | Time: 1:30 p.m. |
| | Judge: Hon. Richard Seeborg |
| | Courtroom 3 – 17th Floor |
| | 450 Golden Gate Avenue |
| | San Francisco, CA 94102 |
| Defendants. | |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on **December 10, 2020, at 1:30 p.m.** before the

Honorable Richard Seeborg, Courtroom 3 – 17th Floor, 450 Golden Gate Avenue, San

Francisco, California, the United States Department of the Interior, the United States Bureau of

Reclamation, David Bernhardt in his official capacity as the Secretary of the Interior, Brenda Burman in her official capacity as Commissioner of the United States Bureau of Reclamation, and Ernest Conant in his official capacity as U.S. Bureau of Reclamation California-Great Basin Regional Director (hereafter collectively referred to as "Federal Defendants") will and hereby do move for an order dismissing count one of the Complaint for lack of constitutional standing and/or for failure to state a claim upon which relief can be granted. Dismissal of count one is appropriate under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Moreover, the Federal Defendants request that pursuant Federal Rules of Civil Procedure 12(b)(7) and 19(a), the Court compel Plaintiff to either drop its request to void a particular contract or to join the contractor that is a signatory to that contract. [1]

In support of this motion, the Federal Defendants will rely on the Memorandum of Points and Authorities below, any Reply brief, the judicial record in this case, and any oral argument.

---

[1] Although the Complaint only specifically mentions the contract with Westlands Water District, Plaintiff, also appears to be challenging all converted contracts and any future contract conversions:

> Hoopa seeks an order and judgment setting aside, declaring invalid, and rescinding Reclamation's conversion of certain time-limited Central Valley Project ("CVP") renewal contracts into permanent repayment contracts with water contractors (including but not limited to Westlands Water District Contract No. 14-06-200-495A-IR1-P) due to Reclamation's failure to comply with the CVPIA, NEPA, and APA. Hoopa further seeks an order enjoining Reclamation from converting or amending any additional CVP contracts that Reclamation is in the process of converting into permanent repayment contracts absent full compliance with the CVPIA, NEPA, WIIN Act, and APA as discussed herein.

Compl. ¶ 2. Plaintiff's Complaint therefore implicates 90 contracts and 79 different contractors (some contractors have more than one contract with Reclamation).

## ISSUES PRESENTED

- Does Plaintiff lack constitutional standing because it has not identified a concrete, particularized, and imminent injury?

- Does Plaintiff lack constitutional standing because the challenged agency action has no causal relationship to Plaintiff's purported (and entirely speculative) injuries?

- Does Plaintiff's Central Valley Project Improvement Act ("CVPIA") and Administrative Procedure Act ("APA") claim fail because the CVPIA only applies to "new" or "renewed" contracts and the contracts in dispute here are existing contracts that were amended (or "converted") under the Water Infrastructure Improvements for the Nation Act ("WIIN Act")?

- Does Plaintiff's CVPIA and APA claim that the Federal Defendants converted water service contracts "without expressly incorporating all requirements imposed by existing law" fail as a matter of law because the referenced contracts do actually incorporate all requirements of existing law?

- Are non-party water contractors necessary parties in this case where Plaintiff seeks to invalidate contracts that have already granted those water contractors valuable rights?

## REQUESTED RELIEF

The Federal Defendants request that the Court dismiss Plaintiff's CVPIA claim at this time for lack of constitutional standing and, alternatively, for failure to state a claim. Additionally, the Federal Defendants request that the Court compel Plaintiff to join all the parties to the challenged contracts or dismiss Plaintiff's claims.

## <u>TABLE OF CONTENTS</u>

I.      Introduction ................................................................................................ 1

II.     Background.................................................................................................. 3

III.    Law & Argument ........................................................................................ 6

      A.     12(b)(1): Plaintiff lacks constitutional standing to raise its CVPIA claim ............ 6

      B.     12(b)(6): Plaintiff's CVPIA claim fail as a matter of law ................................... 11

            1.     Plaintiff's CVPIA claim fail because the CVPIA's provisions do not apply to converted contracts under the WIIN Act.................................... 11

            2.     Plaintiff's CVPIA claim fails because the disputed conversion contracts actually comply with the CVPIA's requirement to incorporate federal law.......................................................................... 13

      C.     12(b)(7): Water contractors are necessary parties if Plaintiff seeks to invalidate contracts that have conferred valuable rights on the contractors.......... 16

IV.     Conclusion.................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Alto v. Black*,
    738 F.3d 1111 (9th Cir. 2013) .................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................11

*Cetacean Cmty. v. Bush*,
    386 F.3d 1169 (9th Cir. 2004) ...................................................................................7

*City & Cty. of San Francisco v. Whitaker*,
    357 F. Supp. 3d 931 (N.D. Cal. 2018).........................................................................7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)...................................................................................................7

*Ctr. for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) .....................................................................................7

*Cunha v. IntelliCheck, LLC*,
    254 F. Supp. 3d 1124 (N.D. Cal. 2017) ......................................................................8

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
    276 F.3d 1150 (9th Cir. 2002) ..................................................................................16

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
    932 F.3d 843 (9th Cir. 2019) ....................................................................................18

*Diversity v. Babbitt*,
    150 F.3d 1152 (9th Cir. 1998) ..................................................................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...................................................................................................7

*Grant Cnty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*,
    579 F.3d 1345 (Fed. Cir. 2009) ...............................................................................4, 5

*Ivanhoe Irr. Dist. v. McCracken*,
    357 U.S. 275 (1958).................................................................................................. 4

*Lomayaktewa v. Hathaway*,
    520 F.2d 1324 (9th Cir.1975) ..................................................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................................................7

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ...........................................................................15

*Nat. Res. Def. Council v. Kempthorne*,
   539 F. Supp. 2d 1155 (E.D. Cal. 2008) ......................................................16, 17

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................ 6

*Razaghi v. Razaghi Dev. Co., LLC*,
   No. 2:18-CV-01622-GMN-DJA, 2020 WL 5821829 (D. Nev. Sept. 30, 2020) .....................15

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
   768 F.3d 938 (9th Cir. 2014) ...........................................................................11

*Russello v. United States*,
   464 U.S. 16 (1983) ........................................................................................13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ......................................................................6, 9

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) ........................................................................... 4

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014) .......................................................................3, 4

*Spokeo v. Robinson*,
   136 S. Ct. 1540 (2016) ................................................................................7, 8

*Star Int'l v. Ariz. Corp. Comm'n*,
   720 F.2d 578 (9th Cir. 1983) ...........................................................................15

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) .............................15

*Steel Co. v. Citizens for a Better,*
   *Env.*, 523 U.S. 83 (1998) ................................................................................ 6

*Steinle v. City & Cty. of San Francisco*,
   919 F.3d 1154 (9th Cir. 2019) .........................................................................15

*United States v. Gerlach Live Stock Co.*,
   339 U.S. 725 (1950) ........................................................................................ 1

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...........................................................................15

*United States v. State Water Resources Control Board*,
   182 Cal. App. 3rd 82 (1986) ...........................................................................12

*Walker v. Fred Meyer, Inc.*,
   953 F.3d 1082 (9th Cir. 2020) .........................................................................15

**Statutes**

43 U.S.C. § 485h ............................................................................................. 5

43 U.S.C. § 485h(c) ......................................................................................... 4

43 U.S.C. § 485h(d) ........................................................................................ 4

43 U.S.C. §§ 371-600e .................................................................................... 4

Pub. L. No. 102-575, 106 Stat. 4600 (1992) ..........................................2, 4, 5, 11, 14

Pub. L. No. 114-322, 130 Stat. 1628 (2016) ................................................. 1, 5, 10

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 6

Fed. R. Civ. P. 19(a)(1) ................................................................................ 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In 2016 Congress passed the WIIN Act to, among other things, allow Central Valley Project ("CVP") water contractors to prepay CVP-related construction debts they owed to the United States, something that was not allowed absent Congressional authorization.[2]  Pub. L. No. 114-322, § 4011(a), 130 Stat. 1628, 1878 (2016).  To accomplish its goal of accelerated repayment of debts, Congress requires the Secretary of Interior (the "Secretary") to convert existing renewable water service contracts into no term repayment contracts upon the request of any water contractor.  Since the WIIN Act was passed, 79 out of 198 CVP water contractors who have contracts eligible for conversion have requested conversion.  Declaration of Lisa M. Holm, October 5, 2020 ¶ 5 ("Holm Decl."), attached as Exhibit A.  The Federal Defendants have already converted 56 contracts as required by the WIIN Act, and 34 more are in the process of being converted.  *Id.* ¶ 6.

In response to these contract conversions, the Hoopa Valley Tribe (hereinafter, "Plaintiff") filed this lawsuit, arguing that somehow the prepayment of debts owed to the United States by water contractors will harm the Tribe's water and fishing rights.  Plaintiff's first count claims that "Reclamation violated and is violating Section 3404(c)(2) of the CVPIA and the APA by executing or otherwise approving the conversion of CVP renewal contracts into permanent water service contracts without expressly incorporating all requirements imposed by existing law. . . ." Compl. ¶ 98, ECF No. 1.  Plaintiff's second count claims that "Reclamation's

---

[2] Under traditional Reclamation law, water contractors could not prepay their portion of the CVP's fixed construction costs, but were required to make annual installment payments until the debt was satisfied.  *See United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 734 (1950).  Only explicit Congressional authorization permits prepayment.  *Id.*

execution and/or approval of the conversion of CVP renewal contracts into permanent water service contracts constitutes a major federal action," and that "Reclamation has a duty under NEPA to prepare an EIS or an EA before approving conversion of the contracts." *Id.* at ¶ 102. Plaintiff's CVPIA must be dismissed for the following reasons.[3]

First, Plaintiff cannot establish any of the elements necessary to satisfy Article III's standing requirement and therefore its CVPIA claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). As an initial matter, Plaintiff has not pled any non-conclusory facts demonstrating that it has or will imminently suffer an injury. Moreover, the agency action Plaintiff challenges – the conversion of CVP contracts under the WIIN Act – are not causally linked to the substantive harm Plaintiff allegedly suffers – decreases in the water levels of the Trinity and Klamath rivers. Therefore, Plaintiff has suffered no cognizable harm sufficient to confer standing.

Second, Plaintiff's CVPIA claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because § 3404 of the CVPIA – which places limits on the Secretary's contracting authority – only applies to "new short-term, temporary, or long-term contracts or agreements" or "renewal of existing long-term contracts." CVPIA, Pub. L. No. 102-575, § 3404, 106 Stat. 4600 (1992). The converted no term prepayment contracts at issue in this case are not "new" or "renewal" contracts and they are not "term" contracts. Here, the Federal Defendants converted existing water service contracts allowing for the prepayment (or accelerated repayment) of construction debt. Because § 3404 of the CVPIA does not constrain the

---

[3] The Federal Defendants also believe Plaintiff's NEPA claim fails as a matter of law, but will raise this argument at a later stage in conjunction with other arguments that may depend on the administrative record.

Secretary's powers to convert existing contracts under the WIIN Act, Plaintiff's first claim fails as a matter of law.

Third, Plaintiff's CVPIA claim also fails because Plaintiff's only alleged CVPIA violation is that the converted contracts do not incorporate all requirements imposed by existing federal Reclamation law. This allegation is simply incorrect. The converted contracts, on their face, do incorporate federal Reclamation law, and Reclamation is not required to individually list every requirement imposed by existing Reclamation law when converting contracts under the WIIN Act. The Court can consider these converted contracts because they are explicitly referenced in Plaintiff's Complaint and are the subject of Plaintiff's claim. Because the converted contracts incorporate the requirements of federal Reclamation law, including §§ 3404(c)(2) and §3406 (b)(23) of the CVPIA, Plaintiff's first claim must be dismissed.

Finally, the contractors that were parties to the disputed contracts are necessary parties to this action. Plaintiff must either join these necessary parties or Plaintiff's contractual claims must be dismissed.

## II.    BACKGROUND

Since the early twentieth century, "land owners, local irrigation districts, and the federal and California state governments have pumped fresh water out of the San Joaquin and Sacramento Rivers (and their tributaries) to irrigate the agricultural lands of the Central Valley and to provide drinking water to the people of California." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 983 (9th Cir. 2014). California, through its Department of Water Resources ("DWR"), governs this pumping through the State Water Project ("SWP"), the largest state-built water project in the United States. *Id.* The federal government does so through the

CVP, "the largest federal water management project in the United States." *Id.* at 984 (citation omitted).

The CVP and the SWP, operated by the Bureau of Reclamation ("Reclamation") and DWR, respectively, are "perhaps the two [] most important water projects in the United States." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 592 (9th Cir. 2014). Together, they "provide water to more than 25 million agricultural and domestic consumers in central and southern California." *Locke*, 776 F.3d at 984.

Although the CVP was originally planned by the State of California as a state project, the Federal government overtook construction when California was unable to finance the project on its own. *See Ivanhoe Irr. Dist. v. McCracken*, 357 U.S. 275, 280 (1958). The federal government spent billions of dollars on the CVP and for decades has entered into contracts with local water boards, municipalities, landowners and other users to recoup a share of the CVP's capital construction costs, along with a share of operational and maintenance costs. *See* 43 U.S.C. § 485h(c) – (e); *see also Grant Cnty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*, 579 F.3d 1345, 1351–52 (Fed. Cir. 2009).

Operation of the CVP, including the aforementioned repayment obligations, is generally governed by the Reclamation Act of 1902 ("RA"), Pub. L. No. 57-161, § 2, 32 Stat. 388, 388 (codified as amended at 43 U.S.C. §§ 371-600e), the Reclamation Project Act of 1939 ("RPA"), 43 U.S.C. § 485h(d) & (e), and the CVPIA, Pub. L. No. 102-575, §§ 3401–3412. The CVPIA, among other things, establishes the priority of project purposes[4] and also places conditions on

---

[4] The CVPIA modified the hierarchy of purposes for the CVP to achieve reasonable balance between the competing demands for CVP water by making protection of fish and wildlife a co-equal purpose with irrigation and municipal and industrial uses. CVPIA, Pub. L. No. 102-575, § 3402(f). The CVPIA directs Reclamation to operate the CVP for the primary purposes of river regulation, navigation, and flood control; for the secondary purposes of water supply for

the ability of the Secretary to enter into new water contracts or to renew existing water contracts. The RA and RPA set forth the procedures for entering into 9(c), 9(d) and 9(e) contracts (further explained below) with local water contractors, including how the Secretary is to recoup the government's CVP-related construction costs. 43 U.S.C. § 485h (c), (d) & (e). The recoupment of debt owed to the federal government for the construction of CVP projects is the focus of this case.

9(c)(1) and 9(d) "repayment" contracts require water contractors to repay CVP-related construction costs in fixed annual installments over a predetermined period of time, in addition to their share of operation and maintenance expenses. *Grant Cnty.*, 579 F.3d at 1351. By contrast, 9(c)(2) and 9(e) "water service" contracts are either short or long-term contracts for water delivery at an annual rate set by the Secretary.[5] *Id.* at 1352. Under traditional Reclamation law, water contractors could not voluntarily prepay their share of the CVP's construction costs, but were instead bound by the incremental repayment obligations set forth in their 9(c), 9(d) or 9(e) term contracts. *See supra*, n. 1.

The WIIN Act altered the traditional "repayment" landscape by explicitly authorizing prepayment of CVP-related construction debts. Section 4011 of the WIIN Act requires the Secretary to convert any 9(e) or 9(c)(2) water service contracts into 9(d) or 9(c)(1) repayment contracts upon the request of any water contractor. Pub. L. No. 114-322, § 4011(a), 130 Stat.

---

irrigation and domestic and industrial uses and fish and wildlife mitigations, protection, and restoration; and for the tertiary purposes of power and fish and wildlife enhancement. *Id.* § 3406(a)(1)-(3) .

[5] 9(e) and 9(c)(2) contracts were designed by Congress to give the Secretary contractual flexibility to provide water to contractors who could not afford to repay construction costs. *Grant Cnty.*, 579 F.3d at 1352.

1628, 1878 (2016).  Section 4011 further requires the Secretary, upon the request of any contractor, to convert 9(c)(1) or 9(d) repayment contract into "no term prepayment" contracts where the contractors are authorized to pay the remaining construction costs owed to the federal government either as an immediate lump sum or under an accelerated time table.  Of the 189 contractors who have conversion-eligible water service contracts with Reclamation, 79 have requested that their water service contracts be converted into no term prepayment contracts. Holm Decl. ¶ 5.  Reclamation has executed 56 conversion contracts and is in the process of converted 34 more contracts.  *Id.* ¶ 6.  These contract conversions include Westlands Water District Contract No. 14-06-200-495A-IR1-P, attached as Exhibit B, which Plaintiff explicitly references in its Complaint.

Plaintiff seeks to invalidate the conversion of the Westlands contract among others, arguing that the Federal Defendants were required to adhere to the CVPIA, NEPA, and APA when converting these contracts and failed to do so.  For the reasons that follow, Plaintiff's CVPIA claim must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## III.    LAW & ARGUMENT

### A.  12(b)(1): Plaintiff lacks constitutional standing to raise its CVPIA claim

Whether a plaintiff has Article III standing is a threshold jurisdictional question, and the Federal Defendants' hereby challenge Plaintiff's standing by filing this Rule 12(b)(1) motion.[6] *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1036 (N.D. Cal. 2014) (quoting *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 94 (1998)); Fed. R. Civ. P. 12(b)(1).  Plaintiff bears the

---

[6] As permitted by law, the Federal Defendants facially and/or factually attack Plaintiff's claim to standing.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

burden of plausibly alleging constitutional standing,[7] which requires Plaintiff to show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).; *Spokeo v. Robsinson*, 136 S. Ct. 1540, 1547 (2016); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

Here, Plaintiff cannot establish that it suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). To be concrete, the injury, "must actually exist." *Id.* "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). And to be imminent, an injury "must be '*certainly impending.*'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Conjectural, hypothetical, or speculative injuries, such as '[a]llegations of possible future injury,' do not suffice." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019).

Plaintiff asserts that the conversion of renewable water service contracts into no term prepayment contracts will substantively harm Plaintiff's water and fishing rights. Compl. ¶¶ 2 – 4, 98. Beyond this conclusory statement about harm, Plaintiff has pled no facts demonstrating

---

[7] "The party invoking federal jurisdiction bears the burden of establishing these elements," because they are "an indispensable part of the plaintiff's case." *City & Cty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 940 (N.D. Cal. 2018) (quoting *Lujan*, 504 U.S. at 561).

that the converted contracts will imminently harm the Tribe's water and fishing rights. For example, Plaintiff has not alleged that since the conversion of the contracts, the water levels in the Trinity and Klamath rivers have decreased. Plaintiff has also failed to point to any provision of the converted contracts that alter the *status quo* regarding water levels. And one specific harm they do identify – Reclamation's purported failure to incorporate the requirements of §§ 3404 and 3406 of the CVPIA into the converted contracts – cannot, standing alone, constitute an injury in fact. *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1139 (N.D. Cal. 2017) (quoting *Spokeo*, 136 S.Ct. at 1549)) ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). Plaintiff must allege some real, non-hypothetical harm, or risk of harm, resulting from the statutory violation. Plaintiff has identified no such harm. And more pointedly the technical, statutory harm Plaintiff does allege is simply incorrect. The Federal Defendants did actually incorporate the CVPIA's requirements into the converted contracts by obligating Reclamation to adhere to all federal Reclamation law and related regulations. *See infra*, Section (III)(B)(2). Because Plaintiff has not identified an imminent, concrete, non-technical harm that it is currently suffering or will imminently suffer, Plaintiff has not adequately pled an injury in fact for the purposes of Article III standing.

Even if the Court finds that the Plaintiff's conclusory statements regarding harm are sufficient to plead an injury in fact, nothing in the Complaint connects any harm to Plaintiff's water and fishing rights to Reclamation's conversion of CVP water contracts. Thus, Plaintiff cannot establish the causation element of standing. As discussed more fully below, and contrary to Plaintiff's allegations, the converted no term repayment contracts actually incorporate the

1    requirements of §§ 3404 and 3406 of the CVPIA and, in doing so, condition water delivery on

2    the Federal Defendants' compliance with federal Reclamation law. However, even if the

3    converted contracts did not require compliance with federal Reclamation law, there is no non-

4    speculative, non-conclusory allegation that these contract conversions have caused or will cause

5    harm to Plaintiff's water and fishing rights. Even if water levels in the Trinity and Klamath

6    rivers decreased (or will decrease) in a way that has (or will) harm Plaintiff's fishing interests,

7    Plaintiff has failed to identify how the contracts it is challenging in this case caused any decrease

8    in water levels. That failure is fatal.

9         A comparison of Westlands' original water service contracts, attached as Exhibit C, and

10   Westlands' converted no term prepayment contract, attached as Exhibit B, reveals that the

11   conversion process did not affect Plaintiff's substantive water and fishing rights in any way.[8]

12   *See also* Holm Decl. at ¶¶ 8–10. Under the original water service contract, Westlands was

13   entitled to water delivery so long as: (i) it met their obligation to repay their portion of the CVP's

14   construction costs and maintenance and operation expenses, and (ii) the Federal Defendants were

15   able to deliver water without violating federal Reclamation law.[9] Under Westlands' WIIN Act

16   conversion contract, Westlands prepaid its portion of the CVP's construction costs and therefore

17   water delivery is now conditioned on Westlands: (i) paying its portion of the CVP's maintenance

18   and operation expenses, and (ii) the Federal Defendants being able to deliver water without

19

20   [8] The Court can compare the original water service contracts with the converted no term
     prepayment contracts to determine that the conversion process did not affect Plaintiff's
21   substantive water and fishing rights in any way. Consideration of extraneous documents beyond
     the face of the Complaint is permitted when, as here, the Plaintiff references the extraneous
22   document in its pleading or the defendant raises a factual challenge to jurisdiction. *Meyer*, 373
     F.3d at 1039.

23   [9] Plaintiff's Complaint only explicitly references the Westlands contract, but this discussion
     applies with equal force to other water contractors' contracts.

violating federal Reclamation law. In other words, the only substantive change between the renewable water service contract and the current no term prepayment contract is that Westlands no longer owes the Federal Defendants its portion of the CVP's construction costs.[10] In no way do the converted contracts affect the amount of water that will be delivered in any given year to any particular water contractor. Holm Decl. at ¶ 9. The disputed contract conversions are a means of accelerating the payment of the water contractors' preexisting debt to the United States. Allowing water contractors to write checks to the federal government for a preexisting debt and then depositing those funds into the Treasury does not affect water levels or threaten the sustainability of fish in any way, and therefore the contract conversions could not have injured Plaintiff.

Because the converted contracts do nothing to change the amount of water available to Plaintiff or the Federal Defendants' obligations to protect Plaintiff's water and fishing rights, Plaintiff has not suffered a cognizable injury that is fairly traceable to the Federal Defendants' conversion of CVP water contracts. Accordingly, Plaintiff's substantive CVPIA claim must be dismissed for lack of standing.

---

[10] The WIIN Act explicitly states that when converting contracts under § 4011 (a)(1), (a)(2) or (a)(3), the Secretary can only alter the terms to allow prepayment and cannot alter other contractual obligations:

> All contracts entered into pursuant to paragraphs (1), (2), and (3) shall . . . . [] not modify other water service, repayment, exchange and transfer contractual rights between the water users' association, and the Bureau of Reclamation, or any rights, obligations, or relationships of the water users' association and their landowners as provided under State law.

WIIN Act, Pub. L. No. 114-322, § 4011(a)(4)(C).

**B. 12(b)(6): Plaintiff's CVPIA claim fail as a matter of law**

In addition to there being no Article III standing, Plaintiff's CVPIA claim also fails as a matter of law. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing 12(b)(6) motions, courts must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

**1. Plaintiff's CVPIA claim fail because the CVPIA's provisions do not apply to converted contracts under the WIIN Act**

Plaintiff's CVPIA claim must be dismissed because §§ 3404 and 3406 of the CVPIA do not apply to WIIN Act contract conversions. Section 3404 of the CVPIA limits the Secretary's authority to enter into <u>new</u> water supply contracts and to <u>renew</u> existing long-term water supply contracts. CVPIA, Pub. L. No. 102-575, §§ 3404(a) and (c). By its explicit and plain terms, § 3404(a) limits the Secretary's power to enter into new and contracts that have a definite duration (either short-term or long-term).[11] Likewise, § 3404(c) limits the Secretary's power to renew an

---

[11] Section 3404(a) of the CVPIA provides:

(a) New Contracts.--Except as provided in subsection (b) of this section, the Secretary shall not enter into any **new** short-**term**, temporary, or long-**term** contracts or agreements for water supply from the Central Valley Project for any purpose other than fish and wildlife before:

(1) The provisions of subsections 3406(b) -(d) of this title are met;

existing term contract.[12]  Other portions of the CVPIA, including §§ 3405(b) and (c), do impose

requirements on water service or repayment contracts "entered into, renewed, or *amended*."[13]

(Emphasis added.)  Section 3404 of the CVPIA, however, only limits the Secretary's ability to

---

(2) The California State Water Resources Control Board concludes the review ordered by the California Court of Appeals in *U.S. v. State Water Resources Control Board*, 182 Cal. App. 3rd 82 (1986) and determines the means of implementing its decision, including the obligations of the Central Valley Project, if any, and the Administrator of the Environmental Protection Agency shall have approved such decision pursuant to existing authorities; and,

(3) At least one hundred and twenty days shall have passed after the Secretary provides a report to the Committee on Energy and Natural Resources of the Senate and the Committee on Interior and Insular Affairs and the Committee on Merchant Marine and Fisheries of the House of Representatives explaining the obligations, if any, of the Central Valley Project system, including its component facilities and contracts, with regard to achieving its responsibilities for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary as finally established and approved by relevant State and Federal authorities, and the impact of such obligations on Central Valley Project operations, supplies, and commitments.

(Emphasis added.)

[12] Section 3404(c) of the CVPIA provides, in relevant part:

(c) Renewal of Existing Long-Term Contracts.--Notwithstanding the provisions of the Act of July 2, 1956 (70 Stat. 483), the Secretary shall, upon request, **renew** any **existing long-term** repayment or water service contract for the delivery of water from the Central Valley Project for a period of 25 years and may renew such contracts for successive periods of up to 25 years each.

(Emphasis added.)  Section 3404(c), like § 3404(a), then conditions the Secretary's authority to renew existing contracts on compliance with certain provisions of law.

[13] Because §§ 3405(b) and (c) of the CVPIA explicitly apply to contractual amendments, Reclamation knew it must comply with §§ 3405(b) and (c) when converting contracts pursuant to the WIIN Act.  And even though §§ 3404 and 3406 of the CVPIA do not apply to contractual amendments, Reclamation still complied with those provisions when converting contracts.

enter into new or renew existing contracts; it does not limit the Secretary's authority to convert existing contracts into repayment contracts under the WIIN Act.[14]

In this case, the disputed contracts are not new term contracts and they are not renewals of existing term contracts. Here, existing renewable water service contracts were converted to allow for prepayment of construction debts owed to the United States and to remove the provision limiting the life of the contract to a specific "term" or duration. Therefore, the Federal Defendants' conversion of contracts under the WIIN Act falls outside the scope of the §§ 3404 and 3406's limitations on the Secretary's contracting authority. Because the CVPIA does not apply to Reclamation's challenged actions, the Secretary was free to convert CVP contracts without complying with § 3404 of the CVPIA. Thus, Plaintiff's CVPIA claim fails as a matter of law and must be dismissed.

### 2. Plaintiff's CVPIA claim fails because the disputed conversion contracts actually comply with the CVPIA's requirement to incorporate federal law

Even if the Court were to find that the CVPIA's limitations on the Secretary's contracting authority found in §§ 3404 and 3406 apply to the disputed WIIN Act contract conversions, Plaintiff's CVPIA claim still fails. In its Complaint, Plaintiff only alleges that the Federal Defendants "violated and [are] violating Section 3404(c)(2) of the CVPIA and the APA by executing or otherwise approving the conversion of CVP renewal contracts into permanent water service contracts without expressly incorporating all requirements imposed by existing law. . . ." Compl. ¶ 98. Importantly, Plaintiff's Complaint also references Westlands Water District

---

[14] Congress clearly intended to exclude contractual amendments from § 3404's requirements because § 3404 never references amendments and other provisions of the CVPIA do reference contractual amendments. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Contract No. 14-06-200-495A-IR1-P, attached as Exhibit B. The plain terms of the referenced contract show that it complies with § 3404(c)(2)'s requirement that "the Secretary shall incorporate all requirements imposed by existing law, including provisions of this title, within such renewed contracts." CVPIA, Pub. L. No. 102-575, § 3404(c)(2). Specifically, Article 14 of Westlands' converted contract states that:

> The parties agree that the delivery of Irrigation Water or use of Federal facilities pursuant to this Contract is subject to Federal Reclamation law, including but not limited to, the Reclamation Reform Act of 1982 (43 U.S.C. 390aa et seq.), as amended and supplemented, and the rules and regulations promulgated by the Secretary of the Interior under Federal Reclamation Law.

Exhibit B at 42. When negotiating Westlands' converted contract, Reclamation complied with § 3404(c)(2) of the CVPIA. *See supra* Section 3(B)(1). And to the extent that Plaintiff suggests that Reclamation must specifically name provisions, agreements and letters that reference the Hoopa Valley Tribe, that position is simply untenable. The requirement that the Federal Defendants comply with "Federal Reclamation Law" and related regulations is an umbrella that covers all of Plaintiff's concerns and any attempt to impose a requirement that Reclamation include specific information about specific agreements with specific parties in every water contract would be unwieldy.[15] Because the converted contract is conditioned on the Federal Defendants' compliance with all federal Reclamation law, including but not limited to §§ 3404(c)(2) and 3406(b)(23), Plaintiff's assertion that the Federal Defendants failed to incorporate federal Reclamation law into the converted contract is simply false.

---

[15] Under Plaintiff's view, a water contract could be invalidated if it failed to incorporate a specific settlement agreement between Reclamation and a random farmer in the 1990s. It is understandable that Plaintiff wants to maximize its protections by having specific references to the Hoopa Valley Tribe in every water contract, but Reclamation simply cannot be expected to include specific references to every party that is affected by the CVP.

Although ordinarily courts are constrained to reviewing the face of the complaint and any matters that are judicially noticeable, *see MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983), in this case, the Court may consider the Westlands contract (and others) under the incorporation by reference doctrine. This doctrine is an exception to the general rule limiting the Court's review to the face of the complaint – an exception that allows the Court to consider any document the plaintiff references throughout the complaint or that forms the basis of the plaintiff's claim.[16] *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1085 (9th Cir. 2020); *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1163 (9th Cir. 2019); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *2 (N.D. Cal. June 5, 2009). Because the authenticity of the Westlands contract is indisputable and because Plaintiff's Complaint references and is dependent upon the Westlands contract (among others), the Court may consider the Westlands contract. *See Razaghi v. Razaghi Dev. Co., LLC*, No. 2:18-CV-01622-GMN-DJA, 2020 WL 5821829, at *10 (D. Nev. Sept. 30, 2020) ("A Court may appropriately consider the terms of a contract at the motion to dismiss stage when the contract is referenced in the complaint and its terms are not in dispute."). Because the Westlands contract unequivocally shows that the Federal Defendants complied with the CVPIA, Plaintiff's CVPIA claim fails as a matter of law and must be dismissed.

---

[16] If necessary for consideration at the 12(b)(6) stage, the Federal Defendants ask the Court to take judicial notice of the Westlands contract and any other contracts Plaintiff seeks to invalidate.

### C. 12(b)(7): Water contractors are necessary parties if Plaintiff seeks to invalidate contracts that have conferred valuable rights on the contractors

As noted in detail above, Plaintiff's claims seek to invalidate existing no term repayment contracts and enjoin execution of additional prepayment contracts between Reclamation and CVP water contractors, including Westlands. None of water contractors, though, are parties to this action. As the Ninth Circuit has recognized, a party to a contract is indispensable when a lawsuit could affect that non-party's contractual rights. *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir.1975)) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."). Therefore, Plaintiff's failure to join the water contractors in this case clearly violates Fed. R. Civ. P. 19.[17]

In a related case, the United States District Court for the Eastern District of California recently recognized that CVP water contractors are required parties in cases challenging the validity of CVP water contracts. *Nat. Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1181 (E.D. Cal. 2008). In *Kempthorne*, several water districts filed a motion to dismiss under Fed. R. Civ. P. 12(b)(7), contesting plaintiffs' ability to invalidate contracts between

---

[17] Rule 19 provides in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if … (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest[.]

Fed. R. Civ. P. 19(a)(1)

Reclamation and other water districts that had not been joined in the case. *Id.* at 1180. After an extensive analysis, the court held that if "Plaintiffs seek to enjoin the Bureau from performing under or rescinding contracts held by absent water contractors, the [water districts'] Rule 12(b)(7) motion must be granted." *Id.* at 1191.

Similar to the plaintiffs in *Kempthorne*, Plaintiff seeks a judgment declaring unlawful, setting aside, and enjoining the no term prepayment contracts Reclamation entered into or plans to enter into, not only with Westlands, but 78 other CVP water contractors. Compl. ¶ 2. Plaintiff's attempt to invalidate repayment contracts and enjoin execution of future no term repayment contracts with CVP water contractors that are not parties to this case violates Rule 19(a) and Ninth Circuit precedent. To comply with Rule 19(a), Plaintiff must either join as a party each CVP water contractor whose repayment contract Plaintiff seeks to invalidate (or enjoin) or voluntarily dismiss their claims seeking to invalidate said contracts. CVP water contractors are presumably subject to service of process and joining them would not deprive this Court of jurisdiction.

Each CVP water contractor whose repayment contract Plaintiff seeks to invalidate or whose proposed repayment contract Plaintiff seeks to prevent from executing has "an interest relating to the subject of the action"—the specific contracts which they have executed or seek to execute with Reclamation pursuant to the WIIN Act. The contracts provide each CVP water contractor with valuable, permanent rights to delivery of CVP water, which Plaintiff's claims threaten. *See Kempthorne*, 539 F. Supp. 2d at 1184 ("Each water service contractor has an interest relating to the subject matter of this action to the extent Plaintiffs seek to invalidate or enjoin the Bureau's performance under *all* contracts."). Further, since Plaintiff seeks remedies that could impact the CVP water contractors' rights to permanent water deliveries, Plaintiff must

join these contractors notwithstanding that its claims are asserted under the APA. *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852-53 (9th Cir. 2019) (absent mining corporation had a legally protected interest in an action challenging agency approvals under the APA "where the effect of a plaintiff's successful suit would be to impair a right already granted.").[18]  Therefore, pursuant to Rules 12(b)(7) and 19(a), the Court should compel Plaintiff to either join the CVP water contractors or dismiss their claims seeking to invalidate these contracts.

## IV.     CONCLUSION

For the reasons set forth above, the Court should dismiss count one of Plaintiff's Complaint for lack of standing pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  The Court should compel Plaintiff to either join the indispensable water contractors as required by Rules 12(b)(7) and 19(a) or dismiss its contract-related claims.

Dated: October 26, 2020

Respectfully submitted,

PAUL E. SALAMANCA
Deputy Assistant Attorney General

*/s/ J. Scott Thomas*

---

[18] The Federal Defendants usually take the position that the United States is the only required defendant in a suit challenging final agency action under the Administrative Procedures Act. *See e.g.*, *Alto v. Black*, 738 F.3d 1111, 1125-29 (9th Cir. 2013) (holding that tribe was not a required party in APA challenge to federal resolution of a tribal enrollment dispute); *Southwest Ctr. forBiological Diversity v. Babbitt*, 150 F.3d 1152, 1153-55 (9th Cir. 1998) (holding that tribe was not required party in ESA and NEPA challenge to agency action). However, in *Dine Citizens*, the Ninth Circuit made clear that the United States is not the only required defendant when, as here, the effect of an APA challenge would invalidate a contract that has already conveyed valuable rights to third parties, 932 F.3d at 860. Although the United States disagrees with *Dine Citizens*' holding, it is binding and controlling authority in this case under the current state of the law in the Ninth Circuit and would support dismissal, should Plaintiff elect not to join the contractors.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

JEFFREY SCOTT THOMAS
Trial Attorney
U.S. Department of Justice
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2020, I electronically filed the **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of Court using the ECF system, which will automatically send email notification to the attorneys of record.

/s/ J. Scott Thomas
JEFFREY SCOTT THOMAS