Thomas P. Schlosser WSBA #06276
Thane D. Somerville WSBA #31468
MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:    206-386-5200
Fax:    206-386-7322
t.schlosser@msaj.com
t.somerville@msaj.com
Attorneys for Plaintiff Hoopa Valley Tribe

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE,<br><br>         Plaintiff,<br><br>     v.<br><br>UNITED STATES BUREAU OF RECLAMATION; DAVID BERNHARDT, in his official capacity as Secretary of the Interior; BRENDA BURMAN, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST CONANT, in his official capacity as United States Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 3:20-cv-5630-RS<br><br><br>HOOPA VALLEY TRIBE'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>Date:  Thursday, December 10, 2020<br>Time:  1:30 PM<br>Judge:  Hon. Richard Seeborg<br><br>Courtroom 3 – 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Honorable Richard Seeborg |

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

TABLE OF CONTENTS

TABLE OF CONTENTS.....................................................................................................i

TABLE OF AUTHORITIES .............................................................................................ii

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL BACKGROUND ................................................................3

III.   ARGUMENT ........................................................................................8

   A.    The Court Should Deny Defendants' Motion to Dismiss Under FRCP 12(b)(6) Because Hoopa Adequately Alleges That Defendants Have Failed to Comply with Section 3404(c)(2) of the CVPIA. .................................................................8

      1.   The CVPIA, Including Section 3404(c)(2), Continues to Apply to Defendants' Contract Approvals Under the WIIN Act. ...............................................9

      2.   The Contracts Do Not Incorporate, Even by Reference, Applicable Legal Requirements of Critical Importance to Hoopa and the Trinity River Basin. ........13

   B.    Hoopa Has Standing to Assert Its CVPIA Claim. .....................................................17

      1.   Hoopa Has Adequately Alleged Injury-in-Fact Arising from Defendants' Failure to Incorporate Requirements of Existing Law, Which Protect Hoopa and the Trinity River, Within the Contracts as Required by CVPIA § 3404(c)(2). .......................18

      2.   Hoopa Also Satisfies the Causation and Redressability Elements of Standing......23

   C.    CVP Contractors Are Not Required Parties in this APA Proceeding, But Even If They Were, Dismissal Is Not Appropriate Because They Can Be Joined. ................24

IV.   CONCLUSION ..........................................................................25

1

TABLE OF AUTHORITIES

2

**Cases**

3
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................................... 9

4
*Blake v. Arnett,*
  663 F.2d 906 (9th Cir. 1981) ......................................................................... 3

5
*California v. Ross,*
  362 F. Supp. 3d 727 (N.D. Cal. 2018) ...................................................... 9, 22

6
*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
  276 F.3d 1150 (9th Cir. 2002) ..................................................................... 25

7
*Defenders of Wildlife v. Gutierrez,*
  532 F.3d 913, 382 U.S. App. D.C. 312 (D.C. Cir. 2008) ............................ 23

8
*Dine Citizens Against Ruining Our Environment v. BIA,*
  932 F.3d 843 (9th Cir. 2019) ....................................................................... 25

9
*E. Bay Sanctuary Covenant v. Trump,*
  354 F. Supp. 3d 1094 (N.D. Cal. 2019) ...................................................... 22

10
*Hall v. Norton,*
  266 F.3d 969 (9th Cir. 2001) ....................................................................... 17

11
*Kenai Peninsula Borough v. Alaska,*
  612 F.2d 1210 (9th Cir. 1980) ..................................................................... 11

12
*Klamath Water Users Ass'n v. Patterson,*
  204 F.3d 1206 (9th Cir. 2000) ....................................................................... 5

13
*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ..................................................................................... 18

14
*Makah Indian Tribe v. Verity,*
  910 F.2d 555 (9th Cir. 1990) ....................................................................... 25

15
*Mendia v. Garcia,*
  768 F.3d 1009 (9th Cir. 2014) ..................................................................... 23

16
*NRDC v. Kempthorne,*
  2008 U.S. Dist. LEXIS 111588 (E.D. Cal. 2008) ........................................ 23

17
*NRDC v. Patterson,*
  791 F. Supp. 1425 (E.D. Cal. 1992) ............................................................ 20

18
*Parravano v. Babbitt,*
  70 F.3d 539, (9th Cir. 1995), *cert. denied*, 518 U.S. 1016 (1996) ................ 3

19
*Pit River Tribe v. U.S. Forest Service,*
  469 F.3d 768 (9th Cir. 2006) ....................................................................... 19

20
*Port of Astoria v. Hodel,*
  595 F.2d 467 (9th Cir. 1979) ....................................................................... 24

21
*Safe Air for Everyone v. Meyer,*
  373 F.3d 1035 (9th Cir. 2003) ..................................................................... 17

22
*San Luis & Delta-Mendota Water Auth. v. Haugrud,*
  848 F.3d 1216 (9th Cir. 2017) ...................................................... 2, 4, 6, 11, 21

23
*San Luis & Delta-Mendota Water Auth. v. Jewell,*
  52 F. Supp. 3d 1020 (E.D. Cal. 2014) ......................................................... 21

*Savage v. Glendale Union High School*,
    343 F.3d 1036 (9th Cir. 2003) ................................................................ 17
*So. Cal. Edison Co. v. Lynch*,
    307 F.3d 794 (9th Cir. 2002) ................................................................. 10
*Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*,
    232 F.3d 1300 (9th Cir. 2000) ................................................................ 24
*United States v. Eberhardt*,
    789 F.2d 1354 (9th Cir. 1986) .................................................................. 3
*United States v. Winans*,
    198 U.S. 371 (1905) ................................................................................ 3
*Westlands Water Dist. v. U.S. Dep't of the Interior*,
    376 F.3d 853 (9th Cir. 2004) ........................................................... 2, 4, 9
*Westlands Water Dist. v. U.S. Dep't of the Interior*,
    850 F. Supp. 1388 (E.D. Cal. 1994) .......................................................... 6

**Statutes**

Central Valley Project Improvement Act, Pub. L. No. 102-575 (1992) ……………..1-2, 6-25

Trinity River Division Central Valley Project Act, Pub. L. No. 84-386 (1955) …3, 4, 5, 14,15, 21

Trinity River Basin Fish and Wildlife Management Act, Pub. L. No. 98-541 (1984) ...5, 6, 14, 22

Trinity River Basin Fish and Wildlife Management Reauthorization Act of 1995, Pub. L. No. 104-143 (1996) …………………………………………………………….5, 6, 15

Water Infrastructure Improvements for the Nation Act, Pub. L. No. 114-332 (2016) …4-5, 7-8, 10-12, 19, 21

**Rules**

Fed. R. Civ. P. 12 ……………………………………………………………8, 17
Fed. R. Civ. P. 19 ……………………………………………………………24, 25

**Other Authorities**

Memorandum from Hilary C. Tompkins, Solicitor of the Dept. of the Interior to the Secretary of the Interior (Dec. 23, 2014) (M-37030) ....................................................................... 4

Memorandum from John D. Leshy, Solicitor of the Dept. of the Interior to the Secretary of the Interior (Oct. 4, 1993) (M-36979) ....................................................................... 3

Memorandum from Solicitor to Assistant Secretary, Land and Water Resources (Dec. 7, 1979) . 4

Memorandum to Reg. Director, Bureau of Reclamation from Reg. Solicitor (July 25, 1995) ....... 5

Trinity River Record of Decision …………………………………………..……7, 14, 16

Bureau of Reclamation Policy Manual…………………………………………….9, 11

# I.   <u>INTRODUCTION</u>

Hoopa Valley Tribe is a sovereign federally recognized Indian tribe.  The Trinity River is the Klamath River's largest tributary and flows through the Hoopa Valley Reservation.  It is the source of the fishery from which Hoopa has benefited since time immemorial. The Trinity River Division (TRD) of the Central Valley Project (CVP), located in the Trinity River Basin, directly impacts Hoopa's property rights that are held in federal trust and expressly protected by federal laws including the Law of the Trinity River, a body of statutes, regulations, and administrative/ court decisions intended to protect Hoopa and Trinity River resources from TRD/CVP impacts.

By means of the TRD, the Bureau of Reclamation diverts water away from the Hoopa Valley Reservation out of the Klamath-Trinity Basin and as much as 400 miles south into the Central Valley. The TRD is the only CVP facility that exports water to the Central Valley. The diverted water would otherwise flow downstream through the Hoopa Valley Reservation.

The federal government has repeatedly acted through statute, regulation, and agency action to protect and enforce Hoopa's rights in the Trinity River fishery from the impacts of Reclamation's TRD/CVP out-of-basin diversions.  At issue in this case is Section 3404(c)(2) of the Central Valley Project Improvement Act ("CVPIA"), Public Law No. 102-575 (1992)), which states:  "Upon renewal of any long-term repayment or water service contract providing for the delivery of water from the Central Valley Project, the Secretary shall <u>incorporate all requirements imposed by existing law, including provisions of this title, within such renewed contracts</u>. The Secretary shall also administer all existing, new, and renewed contracts in conformance with the requirements and goals of this title." (emphasis added).  Hoopa alleges that Defendants failed to comply with CVPIA § 3404(c)(2) in their recent and ongoing CVP contract approvals and that such failure, standing alone, directly and immediately harms Hoopa.

The interests of Hoopa and the Trinity River Basin are directly threatened by the TRD and CVP and are directly adverse to CVP contractors' interest in obtaining maximum water deliveries from CVP water sources, such as the TRD, at the lowest cost. *San Luis & Delta-*

*Mendota Water Auth. v. Haugrud*, 848 F.3d 1216 (9th Cir. 2017) (rejecting CVP contractor challenge to water releases for fish from TRD); *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853 (9th Cir. 2004) (rejecting CVP contractor challenge to Trinity River Record of Decision and associated water releases for Trinity River restoration).[1]  Although the Defendants and CVP contractors are bound by federal law, Congress in CVPIA § 3404(c)(2) (enacted as part of comprehensive changes in the CVP contracting process) added a protective requirement that CVP contracts expressly incorporate and affirmatively bind CVP contractors to the requirements of existing federal law, including those protecting Hoopa and the Trinity River.

Since enactment of the CVPIA, CVP contract renewals have been of temporary duration and future renewal is discretionary - not guaranteed.  Now, Defendants are contracting under the WIIN Act to allow CVP contractors a potentially permanent contract for CVP water deliveries from the Trinity River.  But they have violated the law and harmed Hoopa by failing to comply with CVPIA § 3404(c)(2) and by failing to incorporate into the permanent contracts the requirements of law that protect Hoopa and the Trinity River from impacts of the TRD and CVP.

This failure is unlawful and poses immediate and concrete injury to Hoopa.  Once effective, these contracts could last forever.  Although underlying statutory and regulatory protections will remain in place, Congress required an additional layer of protection to Hoopa and the Trinity River Basin – that is, the contracts themselves must expressly incorporate and bind the contractors to the existing legal requirements. Defendants' failure to comply with CVPIA § 3404(c)(2) is, right now, depriving Hoopa of a statutorily mandated contractual layer of protection of its interests and performance of those duties.   The injury is redressable, and must be redressed now, by an order holding Defendants' contract approvals unlawful and remanding for reform of the unlawful contracts to comply with CVPIA §3404(c)(2) by expressly incorporating the applicable requirements of existing law within those contracts.

---

[1]  Hoopa intervened in these cases and has, without exception, been granted intervention when sought in matters relating to water and fish in the Trinity and Klamath Rivers due to Hoopa's federally reserved right to take fish from those rivers that flow in the Hoopa Valley Reservation.

## II.   FACTUAL BACKGROUND

Since time immemorial, Hoopa and its members, the Hupa people, have used and continue to use the Klamath-Trinity River system and its anadromous fishery resource for subsistence, cultural, ceremonial, religious, and commercial purposes. *Parravano v. Babbitt*, 70 F.3d 539, 542-46 (9th Cir. 1995), *cert. denied*, 518 U.S. 1016 (1996); *United States v. Eberhardt*, 789 F.2d 1354, 1359 (9th Cir. 1986). The lower twelve miles of the Trinity River and a stretch of the Klamath River flow through the Hoopa Valley Reservation. The fishery resources of the Trinity and Klamath Rivers have been the mainstay of the life and culture of Hoopa and its people. The fishery is "not much less necessary to the existence of the Indians than the atmosphere they breathed." *Blake v. Arnett*, 663 F.2d 906, 909 (9th Cir. 1981) (quoting *United States v. Winans*, 198 U.S. 371, 381 (1905)). The salmon fishery holds significant commercial and economic value in Hoopa's culture and economy. *See* Memorandum from John D. Leshy, Solicitor of the Dept. of the Interior to the Secretary of the Interior (Oct. 4, 1993) (M-36979).

The principal purpose of Hoopa's Reservation was to set aside sufficient resources of the Trinity and Klamath Rivers for the Indians to be self-sufficient and achieve a moderate living based on fish. *Id.*, at 3, 15, 18-21, *cited with approval, Parravano*, 70 F.3d at 542. Hoopa's federal reserved fishing right carries with it a corresponding right to Trinity and Klamath River flow levels that are sufficient to support a productive habitat for Hoopa's anadromous fishery, including but not limited to salmon and steelhead, including those produced by the Trinity River Hatchery, and other culturally important salmon and non-salmonid species.

When Congress authorized the TRD in 1955, Congress recognized that "an asset to the Trinity River Basin, as well as to the whole north coastal area, are the fishery resources of the Trinity River." S. Rep. No. 1154, 84 Cong., 1st Sess. (1955 Senate Report) at 5; H.R. Rep. No. 602, 84th Cong., 1st Sess. (1955 House Report) at 4. In the 1955 legislation authorizing the TRD, Congress expressly conditioned out-of-basin diversions on preservation and propagation of fish and wildlife in the Trinity River Basin. 1955 Trinity River Division Central Valley Project Act

(the "1955 Act"), Pub. L. No. 84-386, 69 Stat. 719, § 2.  This statutory authority remains applicable and effective as a limitation on the TRD/CVP today.  In some years, the Secretary of the Interior has relied on the first proviso in Section 2 of the 1955 Act to supplement flows in the Lower Klamath River for the protection of migrating salmon.  *Haugrud*, 848 F.3d at 1227-31 (affirming Secretary's broad authority under 1955 Act to release protective flows from the TRD).

Separately, the second proviso of Section 2 of the 1955 Act requires the annual release of not less than 50,000 acre-feet from Trinity Reservoir to be made available to Humboldt County and downstream water users including Hoopa. 1955 Act, §2; Memorandum from Hilary C. Tompkins, Solicitor of the Dept. of the Interior to the Secretary of the Interior (Dec. 23, 2014) (M-37030) (advising that provisos 1 and 2 of 1955 Act are independent authorizations and limitations on diversions to the CVP from the TRD). In 1979, Interior Solicitor Krulitz explained that the provisos of Section 2 of the 1955 Act limit the integration of the TRD into the CVP and require the Secretary to exercise a priority for use of all TRD water necessary to protect fish and other in-basin needs over TRD exports to the Central Valley for CVP use. Memorandum from Solicitor to Assistant Secretary, Land and Water Resources (Dec. 7, 1979).  Also, the Trinity River Hatchery (TRH) was developed pursuant to authority of the 1955 Act.  The TRH purpose is to mitigate lost anadromous fish production upstream of the TRD, which permanently blocked fish passage to 109 river miles of the most productive fish habitat in the Trinity River basin. Fish produced at the TRH are essential to Hoopa's exercise of its federal reserved fishing right.

Construction and operation of the TRD radically altered the Trinity River environment by blocking, destroying, and degrading river habitats that supported once-abundant fish populations. *Westlands*, 376 F.3d at 862. In addition to obstructing 109 miles of habitat upstream of Lewiston Dam previously used for holding, spawning and rearing, the TRD diverted an average of 88% of the annual inflow out of the Trinity River and into the Sacramento River Basin during its first 10 years of operation. *Id.* at 861. "Within a decade, the TRD had significantly diminished the salmon and steelhead populations in the Trinity River." *Haugrud*, 848 F.3d at 1223.  The

reduction in salmon populations had a devastating impact on Hoopa, whose members have depended since time immemorial on the fishery resources of the Trinity and Klamath Rivers.

The United States, as trustee for the Tribe, has a fiduciary responsibility to protect and preserve the Tribe's federally reserved fishing and water rights and associated trust resources. *Klamath Water Users Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 2000); Memorandum to Reg. Director, Bureau of Reclamation from Reg. Solicitor (July 25, 1995) ("Reclamation must exercise its statutory and contractual authority to the fullest extent to protect the tribal fisheries and tribal water rights.").  In 1981, relying on an environmental study, authority provided by the 1955 Act, § 2, and the fiduciary trust obligation, the Secretary ordered an increase in annual flow releases from the TRD to the Trinity River downstream of Lewiston Dam for the benefit of Hoopa and its fishery resources and directed initiation of a study to develop a flow regime and other measures to improve Trinity River habitat conditions.  The 1981 Secretarial Order found:

> [T]he [Hupa] and Yurok Indians have rights to fish from the Trinity and Klamath Rivers and to adequate water to make their fishing rights meaningful.  These rights are tribal assets which the Secretary, as trustee, has an obligation to manage for the benefit of the tribes.  The Secretary may not abrogate these rights even if the benefit to a portion of the public from such abrogation would be greater than the loss to the Indians. . . . There are responsibilities arising from congressional enactments, which are augmented by the federal trust responsibility to the Hupa and Yurok tribes, that compel restoration of the river's salmon and steelhead resources to pre-project levels.

In 1984, Congress affirmed and authorized the Secretary's fishery restoration goal in the Trinity River Basin Fish and Wildlife Management Act ("1984 Act"), Pub. L. No. 98-541, 98 Stat. 2721.  Section 2(a) of the 1984 Act directed the Secretary to formulate and implement a program to restore the Trinity Basin fish and wildlife populations to pre-TRD levels.  The 1984 Act, § 2(1)(c), included a mandate to "modernize and otherwise increase the effectiveness of the [TRH]."  Later amending the 1984 Act, Congress added detail to the 1984 Act's hatchery mandate by making the objective of the modernization and improved efficiency to "best serve [the hatchery's] purpose of mitigation of fish habitat loss above Lewiston Dam [of the TRD] while not impairing efforts to restore and maintain naturally reproducing anadromous fish stocks

1  within the basin." Trinity River Basin Fish and Wildlife Management Reauth. Act of 1995, Pub.

2  L. 104-143, 110 Stat. 1338 (1996), §3(c). Congress also clarified that Trinity fishery restoration

3  is to be measured in part by the ability of Indian tribes to participate fully in fish harvest. *Id*., §2.

4  In the Central Valley Project Improvement Act ("CVPIA"), Pub. L. No. 102-575, § 3401-

5  12, 106 Stat. 4600, 4706-31 (1992), Congress dramatically altered the structure and purpose of

6  the CVP. Section 3406(a) added "mitigation, protection, and restoration of fish and wildlife" as a

7  project purpose. Section 3406(a)(2) gave equal priority for use of CVP water to irrigation,

8  domestic uses and fish and wildlife mitigation, protection and restoration purposes, which all

9  have priority over use of CVP water for power uses. CVPIA § 3406(a)(2) also reassigned, from

10  the federal taxpayers to CVP contractors, financial responsibility for environmental costs

11  associated with developing CVP water and managing deliveries to CVP contractors. *Westlands*

12  *Water Dist. v. U.S. Dep't of the Interior* 850 F. Supp. 1388, 1404 (E.D. Cal. 1994).

13  In CVPIA §3406(b), Congress expressly enumerated a suite of environmental restoration,

14  protection, and mitigation measures designed to ameliorate environmental impacts of the CVP.

15  In CVPIA § 3406(b)(23), Congress required the Secretary to take specific actions "in order to

16  meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe, and

17  to meet the fishery restoration goals of the [1984 Act]." The 1984 Act actions identified in

18  section 3406(b)(23) included completion by the Secretary, in consultation with Hoopa, of the

19  Trinity River Flow Evaluation Study ordered by the Secretarial Decision of January 14, 1981;

20  obtaining Hoopa's concurrence in the study results; and implementing the recommendations and

21  associated operating criteria and procedures accordingly. The 1984 Act, as amended, also

22  requires the Secretary to modernize and increase the effectiveness of the TRH to integrate fishery

23  mitigation upstream of the TRD with natural fish restoration downstream of the TRD. Section

24  3406(b)(23) affirmed the specific trust duty owed to Hoopa in the Defendants' operations of the

25  TRD/CVP. The CVPIA supplemented and did not displace the authorities and requirements of

26  the 1955 Act, which remain effective. *Haugrud*, 848 F.3d at 1230.

Pursuant to Section 3406(b)(23), following completion of the mandated flow study, government-to-government consultation, and completion of an EIS under NEPA, the Secretary executed, and Hoopa concurred in, the Trinity River Record of Decision (TRROD).[2]  The TRROD set forth implementation of a flow schedule below Lewiston Dam on the Trinity River designed to restore fish habitat between Lewiston Dam and Weitchpec – at the confluence of the Klamath River.  The TRROD also called for a continued program of habitat restoration and fish monitoring which is being implemented by the Trinity River Restoration Program, of which Hoopa is co-manager.  CVPIA §3406(b)(23) mandates: "[c]osts associated with implementation of this paragraph shall be reimbursable as operation and maintenance expenditures pursuant to existing law" (emphasis added).  Thus, pursuant to CVPIA §3406(b)(23), all costs of TRRP activities are to be charged to and collected from CVP contractors as reimbursable O&M.

To achieve its purposes, the CVPIA also imposed new limitations and requirements on CVP water contracting in CVPIA § 3404, which are described in detail below.  In general, Congress barred new contracts for purposes other than fish and wildlife and placed limitations and conditions, including environmental review, on renewal of existing CVP contracts.  As part of its fundamental alteration of status quo CVP contracting, Congress mandated in CVPIA § 3404(c)(2) that:  "Upon renewal of any long-term repayment or water service contract providing for the delivery of water from the [CVP], the Secretary shall incorporate all requirements imposed by existing law, including provisions of [the CVPIA], within such renewed contracts."  Following the CVPIA, renewal of long-term CVP contracts was barred until completion of required environmental review of their impacts under NEPA.  CVPIA, § 3404(c).  Because not all required environmental review has occurred, the United States has repeatedly approved short-term interim contracts of 2 - 3 years in length.  ECF No. 19-3 (Westlands interim contract).

In 2016, Congress passed the Water Infrastructure Improvements for the Nation Act ("WIIN Act"), Pub. L. No. 114-332, 130 Stat. 1628.  Section 4011 of the WIIN Act authorizes

---

[2]  The TRROD is attached to the Declaration of Thomas P. Schlosser filed herewith.

the conversion of existing water service contracts to repayment contracts "under mutually agreeable terms and conditions." The WIIN Act further authorizes prepayment of certain contracting costs, which, upon prepayment, will allow such CVP contractors to avoid acreage limitations and full cost pricing that would otherwise apply. WIIN Act, § 4011(c)(1). These changes will enable water users to increase the acreage of lands served by CVP deliveries at a lower cost, thereby inducing additional demand for CVP water. Section 4011(a)(2)(D) of the WIIN Act further provides that the converted contracts shall "continue so long as the contractor pays applicable charges . . . ." Thus, the term of the contracts converted under the WIIN Act could be permanent, making inclusion of required legal protections as contract terms critical.

The WIIN Act sharply limits modifications to existing law. Section 4011(d)(4) provides: "Implementation of [the WIIN Act] shall not alter . . . except as expressly provided in this section, any obligation under the reclamation law . . . ." Section 4012(a)(2) provides that the WIIN Act "shall not be interpreted or implemented in a manner that . . . affects or modifies any obligation under the CVPIA [with one exception not relevant here]."[3] Thus, the requirements in CVPIA § 3404 regarding mandatory environmental review prior to entry into long-term contracts and incorporation of existing legal requirements as express terms in CVP contracts remain in effect. Here, Defendants have failed to comply with CVPIA § 3404 (c)(2) and failed to conduct environmental review pursuant to NEPA; thus, their contract approvals are unlawful.

## III.   ARGUMENT

### A. The Court Should Deny Defendants' Motion to Dismiss Under FRCP 12(b)(6) Because Hoopa Adequately Alleges That Defendants Have Failed to Comply with Section 3404(c)(2) of the CVPIA.

Defendants move to dismiss Hoopa's claim arising under CVPIA § 3404(c)(2) pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. When evaluating a 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *California v. Ross*,

---

[3]Hoopa has attached relevant portions of the WIIN Act, and other statutes cited, in an Appendix.

362 F. Supp. 3d 727, 735 (N.D. Cal. 2018).  A claim should not be denied under 12(b)(6) unless it is implausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Defendants make two arguments in support of their 12(b)(6) motion.  First, that CVPIA § 3404(c)(2) does not apply to contracts approved by the Federal Defendants under the WIIN Act and second that the Defendants' approvals satisfy the requirements of CVPIA § 3404(c)(2) if applicable.  Both arguments fail.  Hoopa has adequately pled a claim for relief for Defendants' CVPIA violations.

> 1.  <u>The CVPIA, Including Section 3404(c)(2), Continues to Apply to Defendants' Contract Approvals Under the WIIN Act.</u>

The 1992 CVPIA was enacted to "protect, restore, and enhance fish, wildlife, and associated habitats in the Central Valley and Trinity River basins of California." CVPIA, § 3402; *Westlands*, 376 F.3d at 863 (CVPIA confirmed Congress's commitment to restore and protect fish and wildlife habitat of Central Valley and Trinity River Basin).  To achieve its purposes, Congress imposed new express limitations and requirements on CVP water contracting in CVPIA § 3404.  First, Congress barred execution of almost all new contracts of any duration for any purpose other than fish and wildlife until certain conditions were met.  CVPIA, § 3404(a). Second, in section 3404(c)(1), Congress prohibited renewal of any existing long-term repayment or water service contract until appropriate environmental review was completed.  The Bureau of Reclamation Policy Manual on Water Related Contracts and Charges (09/04/20) defines long-term contract as a "contract with a term of more than ten years."[4]  Pending completion of all required environmental review, Congress authorized only short-term renewal contracts of 2-3 year duration. CVPIA, §3404(c)(1). Third, upon completion of all required environmental review, the subsequent renewal of any long-term (i.e., more than ten years) repayment or water service contract was discretionary, not mandatory.  CVPIA, § 3404(c) (requiring Secretary to renew contracts for initial term of 25 years but granting Secretary discretion regarding subsequent renewals). Fourth, upon renewal of <u>any</u> long-term repayment or water service

---

[4]  The Reclamation Policy Manual is at:  http://www.usbr.gov/recman/pec/pec-p05.pdf

contract providing for water delivery from the CVP, Congress required that the Secretary shall incorporate all requirements imposed by existing law . . . within such renewed contracts." CVPIA, § 3404(c)(2).  This requirement, per Reclamation's own manual, would apply to any contract longer than ten years, which includes the contracts approved here under the WIIN Act.[5]

The limitations and conditions on contracting were fundamental to achieving CVPIA purposes, which are focused on ameliorating adverse environmental impacts that resulted, and which continue to result, from CVP operations.  Defendants now suggest that the WIIN Act silently abrogated the stringent limitations and conditions of CVPIA § 3404. To the contrary, the WIIN Act expressly preserves all requirements of the CVPIA in full force.  Section 4012(a) of the WIIN Act expressly states that the WIIN Act "shall not be interpreted or implemented in any manner that . . . (2) affects or modifies any obligation under the [CVPIA] [except for a provision for Stanislaus River predator management not relevant here]."  This includes the requirement of CVPIA § 3404(c)(2) to ensure that any long-term repayment or water service contracts expressly incorporate all requirements of existing law. *See also* WIIN Act, § 4011(d) (providing that WIIN Act does not alter any obligations under the reclamation law (of which CVPIA is part) unless expressly provided). The WIIN Act also reserves the Secretary's discretion to condition the converted contracts on "mutually agreeable terms and conditions."  *Id.*, § 4011(a)(1).

The Court should reject Defendants' argument that the WIIN Act silently and implicitly repealed the requirements of CVPIA § 3404.  Repeals by implication are "heavily disfavored." *So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 810 (9th Cir. 2002).  "A finding of implied repeal must be based on a finding that the legislative body actually formulated the intent to repeal the earlier enactment but somehow failed to carry out that intent."  *Kenai Peninsula Borough v.*

---

[5]  Defendant Bureau of Reclamation Regional Director Ernest Conant, previously argued in his role as counsel for California water districts that the contract renewal provisions of CVPIA Section 3404(c) were "[s]ome of the most onerous provisions of CVPIA" from the water contractors' perspective and stood in sharp contrast to the prior normal course of water contracting by the United States.  *See* Ernest A. Conant, The Central Valley Project Improvement Act Proposed Reforms, 6 San Joaquin Agricultural Law Review 27, 39-40 (1996).

*Alaska*, 612 F.2d 1210, 1214 (9th Cir. 1980); *see also Haugrud*, 848 F.3d at 1230 (rejecting claim that CVPIA silently repealed 1955 Act provisos). Here, the implied repeal claim fails because Congress expressly reserved the CVPIA's applicability in WIIN Act §4012(a).

Defendants argue that, even if the CVPIA is applicable, CVPIA § 3404(c)(2) only applies to "contracts that have a definite duration (either short-term or long-term)." ECF #19, p. 11. In other words, they contend that because the contracts entered into under the WIIN Act could potentially last forever, they somehow do not qualify as "long-term" and thus fall outside the reach of CVPIA § 3404(c)(2). Neither the text nor intent of CVPIA § 3404 nor the WIIN Act support this illogical argument. CVPIA § 3404(c)(2) applies to long-term contracts, which Reclamation's own manual defines as contracts with a term exceeding ten years. *Supra*, n. 4. The WIIN Act contracts, of potentially permanent duration, plainly are long-term. In common parlance, something that may be permanent or last forever is long-term. In the CVPIA, Congress distinguished between "long-term" and "short-term" contracts but nowhere suggested that the CVPIA would exempt contracts of possibly perpetual duration, which are also plainly long-term.

Interpreting CVPIA § 3404(c)(2) to exempt contracts that have no specific end date is inconsistent with the purpose of the CVPIA, and section 3404 in particular, which was designed to ensure that no long-term contracts would be entered into without appropriate environmental review and without incorporation of protective contract terms required by existing law. CVPIA §§ 3404(a), (c) and (d) expressly group repayment contracts with other types of water service contracts with terms longer than three years and impose environmental obligations upon them. Given the fundamental change in long-term water contracting that is mandated in the CVPIA for the express purpose of protecting environmental and tribal trust resources, Defendants cannot avoid the requirements of CVPIA § 3404 applicable to long-term contracts by arguing that a contract with no specific end date (i.e., a contract that could last forever) is not long-term.

Defendants also argue that CVPIA § 3404(c)(2) cannot apply because the WIIN Act contracts are not "new" or "renewed" contracts but are "amended" contracts. This argument also

fails.  Defendants and CVP contractors could not have avoided the CVPIA's requirements in Section 3404(c) by characterizing an extension of a long-term contract for an additional 25 years as a mere "amendment" rather than a "renewal."  Such a superficial distinction would wholly undermine Congress' purpose in §3404 and clearly be unlawful.  Here, Defendants cannot avoid the requirements of §3404 by now characterizing their conversion of existing short-term contracts to contracts of potentially permanent duration as an "amendment."   Nor does the WIIN Act anywhere describe the WIIN Act contract conversion process as one of "amendment." Regardless of whether the WIIN Act contracts are characterized as renewals, amendments, or conversions, the plain language and intent of CVPIA §3404(c)(2) (which is expressly preserved by WIIN Act § 4012(a)) applies to any continuation or extension of any repayment or water service contract of lengthy duration, which these WIIN Act contracts plainly are.  Section 3404 (c)(2) applies to the WIIN Act contracts and Defendants' contract approvals violated that section.

Defendants also frivolously assert that CVPIA §3406 does not apply to the WIIN Act contracts. ECF #19, p. 11. In CVPIA § 3404(a), Congress broadly prohibited any new CVP contracts or agreements for water supply until the provisions of 3406(b) – (d) were met.  Use of "agreements" in the statutory text evidences Congressional intent that §3404 have a broad scope so that fulfillment of §3406 applies to any form of agreement to use CVP water. The WIIN Act expressly preserves all CVPIA obligations in any such agreement. WIIN Act, §4012(a).  Nothing in the WIIN Act conflicts with reclamation law or creates a new form of water supply agreement that was unknown when the CVPIA was enacted.  In fact, the WIIN Act authorizes conversions to contracts first authorized in the Reclamation Projects Act of 1939.  WIIN Act, §4011(a)(1).

CVPIA § 3406 contains the fish and wildlife restoration measures that are the heart of the CVPIA.  Of critical importance to Hoopa is § 3406(b)(23) which is the foundation of the Trinity River Restoration Program (TRRP) and which expressly requires that the costs of implementing § 3406(b)(23) shall be reimbursable by CVP contractors as operation and maintenance expenditures. Defendants' contention in their motion that the WIIN Act contracts are not subject

to § 3406 establishes harm to Hoopa by purporting to eliminate CVPIA requirements intended to fulfill an explicit federal trust responsibility owed to Hoopa under reclamation law.  On one hand, Defendants argue the contracts are subject to all "reclamation law," but on the other hand, they appear to argue that the WIIN Act contracts are exempt from CVPIA § 3406 (as well as § 3404).  Clearly, both positions cannot be true.  A fundamental purpose of Hoopa's suit is to ensure that these potentially permanent contracts clearly define and explain what requirements of federal law will apply and how they will apply over the now-permanent duration of these contracts.  That is what Congress intended in CVPIA §3404(c)(2) to ensure that environmental and trust resources would remain protected over the long-term of CVP operations.

> 2.   The Contracts Do Not Incorporate, Even by Reference, Applicable Legal
> Requirements of Critical Importance to Hoopa and the Trinity River Basin.

Defendants argue that, if the CVPIA continues to apply (which it does), the contracts comply with section 3404(c)(2).  ECF # 19, pp. 13-15. They cite Article 14 of the Westlands Water District contract (at ECF #19-2), which states: "delivery of Irrigation water or use of Federal facilities pursuant to this Contract is subject to Federal Reclamation law."  That provision generally subjecting the contractors to "Federal Reclamation law" does not satisfy the mandate of §3404(c)(2), which requires express incorporation of relevant legal requirements into the contract itself.  CVP contractors are subject to federal reclamation law and all other federal laws regardless of contract terms.  But in CVPIA § 3404(c)(2), Congress mandated more – it required specific and express incorporation of governing legal requirements in the contract itself.

Nor does CVPIA § 3404(c)(2) permit incorporation of applicable legal requirements *by reference*.  If incorporation by reference were authorized, Congress could have so provided. Instead, the plain language of CVPIA §3404(c)(2) states that "the Secretary shall incorporate all requirements of existing law, including provisions of this title, within such renewed contracts." This imposes a mandatory obligation to include as contract terms the relevant requirements of existing law within the four corners of the contract documents.  The CVPIA and section 3404 imposed a fundamental change in long-term contracting in the context of a statute designed to

mitigate past harms and provide future protection from ongoing CVP operations.   The purpose of CVPIA §3404(c)(2) is to make crystal clear the applicable environmental mitigation, restoration, and protection obligations and the related contractor payment obligations as terms in the contracts themselves to avoid or limit disputes about applicability of legal obligations during the life of the long-term contracts.   Since federal law plainly applies to the CVP contractors and the Defendants regardless of what the contracts say, Congress did not have to include section 3404(c)(2).  But Congress determined that it was not enough to simply assume that CVP contractors and the Defendants would adhere to applicable legal requirements.  Instead, Congress required those obligations to be affirmatively specified in the contracts themselves.

Defendants reliance on the general reference to "Federal Reclamation law" in Article 14 of the Westlands contract is also misplaced because the term "Federal Reclamation law," as defined in the contract preamble, does not expressly include laws relevant to protection of Hoopa and the Trinity River. ECF #19-2, p. 1. For example, not included within the contractually negotiated term of "Federal Reclamation law" is the 1955 Act, which limits and conditions the delivery of water to the CVP from the Trinity River Basin.  Nor is the 1984 Act (or its 1996 re-authorization), which authorizes the Secretary's program to restore Trinity River fish populations to pre-TRD levels and to "modernize and otherwise increase the effectiveness of the TRH" included.  Nor does the contract reference to "Federal Reclamation law" include the Trinity River Record of Decision (TRROD), which implements the "operating criteria" language of CVPIA § 3406(b)(23) and is the foundation of the TRRP.  The TRROD, pursuant to § 3406 (b)(23), is to be funded through collection of operation and maintenance charges from CVP contractors.  The TRROD is existing applicable law that is directly relevant to and affected by these CVP contracts. The general reference to "Federal reclamation law" in Article 14, and especially as that term is defined in the contract, does not satisfy the § 3404(c)(2) mandate.

Defendants argue it would be unwieldy to expressly include the applicable legal requirements in the contracts.  Not so.  It would be quite simple to include contract terms

expressly confirming, for example, the statutory requirement that water deliveries to CVP contractors are subordinate to any water necessary to implement the applicable provisos in Section 2 of the 1955 Act, which prioritize deliveries to the Trinity River Basin over the CVP. It would similarly be easy to expressly confirm, for example, that CVP contractors' reimbursable O&M obligations must fund costs of the TRRP and TRH.  The TRH is a Project component developed pursuant to Congress' authorization in the 1955 Act for the purpose of mitigating the loss of upstream fishery habitat caused by TRD development.  And CVPIA § 3406(b)(23) expressly confirms that "costs associated with implementation of [Section (b)(23)] (which includes the costs of implementing the TRRP) shall be reimbursable as operation and maintenance expenditures pursuant to existing law."  Yet, someone reading the WIIN Act contracts now (or fifty years from now) would have no idea that the CVP contractors' O&M payment obligations should include payments to fund the TRH or TRRP – project components that are essential to protection of Hoopa interests and the Trinity River Basin at large.

The argument that inclusion of these requirements of existing law is too unwieldy is further belied by the extensive and detailed provisions in the preamble of the Westlands' contract, for example, that specifically cite to numerous applicable laws, court decisions, and agreements of interest to Westlands and other CVP contractors.  ECF #19-2, pp. 1-7.  Westlands and the CVP contractors did not simply rely on general references to applicable law.  Rather they obtained specific legal references in the contracts to protect their interests.  Hoopa demands similar contractual detail regarding the binding legal obligations that protect its interests, as Congress mandated in CVPIA § 3404(c)(2).  Defendants' failure to comply with the requirements of CVPIA § 3404(c)(2) renders the contracts in their current form unlawful.

Rather than expressly incorporating the applicable requirements of federal law, Article 37 of the Westlands contract expressly reserves the CVP contractors' rights to contest the "validity or application in connection with the performance of the terms and conditions of this Contract of any Federal law or regulation."  ECF #19-2, p. 66.  Thus, the statement that the

contracts are generally "subject to Federal Reclamation law" is expressly negated by Article 37, which confirms that CVP contractors can contest the application of any Federal law that the United States or other interested parties such as Hoopa contend apply to CVP operations. Rather than bind the contractors to applicable federal law, Article 37 of the contracts instead give the contractors license to contest and avoid any applicable federal law requirements. That is directly contrary to the statutory mandate of CVPIA § 3404(c)(2) and is unlawful.

Hoopa does not suggest, contrary to Defendants' argument, that every WIIN Act contract must incorporate terms of every settlement agreement between Reclamation and random farmers over the past forty years. ECF # 19, n. 15. Hoopa is no "random farmer." It is the beneficiary of a fiduciary and statutory trust obligation owed by Defendants. Hoopa has received the express protection of Congress and is entitled to receive the express protection of the Defendants regarding Hoopa's federal reserved rights, especially since the TRROD is a solemn contract between Hoopa and its federal trustee that was authorized by CVPIA § 3406(b)(23).

Hoopa seeks to enforce Congress' mandate that the Secretary incorporate the provisions of statutory law (e.g., the 1955 Act) that condition and limit delivery of water to the CVP to protect Hoopa and the Trinity River. Hoopa further seeks to ensure that the TRH and TRRP, which directly derives from Congress' statutory recognition of the federal trust obligation to Hoopa, remain funded as Congress required in CVPIA §3406(b)(23). These are not mere trifles. Nor are they assertions of speculative injury. Hoopa seeks enforcement of Defendants' fiduciary and statutory obligation to protect its property rights from depredation by CVP contractors. Such protection is fundamental to the continued existence of Hoopa fishing and water rights and the ability of Hupa people to achieve a moderate standard of living from their fishery resources that the United States holds in trust for Hoopa. Accordingly, requirements of existing law must be specified and incorporated expressly in these permanent contracts to ensure continued protection of Hoopa and its rights now and in the future. Anything less is not only a breach of Defendants' obligations under § 3404(c)(2) but also a breach of the trust duties of CVPIA § 3406(b)(23).

**B.  Hoopa Has Standing to Assert Its CVPIA Claim.**

While conceding that Hoopa has standing to pursue its NEPA claim, Defendants argue that Hoopa lacks standing to pursue its CVPIA claim and move to dismiss that latter claim under FRCP 12(b)(1).  Defendants make a factual attack on the Court's subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2003). Thus, the Court must consider both the allegations in Plaintiff's complaint and Plaintiff's declarations in resolving the standing inquiry.  *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Hoopa also relies on its argument in Section III(A) above in support of standing.

Defendants mischaracterize the effect of their contract approvals and the harms alleged by Hoopa.  In CVPIA §3404(c)(2), Congress required CVP contracts to expressly incorporate requirements of existing law. Hoopa is a direct beneficiary of numerous existing legal protections that relate expressly to its fishing and water rights and more generally to the Trinity and Klamath Rivers that flow within its Reservation.  Defendants' failure to include these legal requirements as terms of permanent contracts causes, by itself, immediate injury to Hoopa as it unlawfully deprives Hoopa of a contractual protection of its interests guaranteed by statute.

"The standing inquiry focuses upon '[w]hether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy,' and serves to ensure that 'legal questions presented to the court will be resolved . . . in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'"  *Hall v. Norton*, 266 F.3d 969, 975 (9th Cir. 2001) (internal citations omitted).  Here, Hoopa has a direct and concrete interest in fish and water in the Trinity River - resources that are placed at risk of harm by Defendants' failure to incorporate the requirements of existing law as terms in the now-permanent CVP contracts.  Hoopa also has a direct and concrete interest in continuation of full funding of the TRRP and TRH, which are Project components that must be funded through collection of O&M charges imposed on CVP contractors.  This continuing funding obligation is a requirement of existing law that is not expressly included in the challenged contract approvals.

1    Plaintiffs "seeking to enforce a procedural requirement the disregard of which could

2    impair a separate concrete interest of theirs" can establish standing "without meeting all the

3    normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S.

4    555, 572 (1992). Hoopa does not challenge Defendants' substantive authority to approve the

5    CVP contracts at issue; rather, Hoopa raises a claim under the APA that Defendants' contract

6    approvals fail to comply with the requirements of CVPIA §3404(c)(2).  Having conceded that

7    Hoopa has standing to pursue its APA claim under NEPA, it is not clear how Hoopa could at the

8    same time lack standing to pursue its APA claim arising under the CVPIA.

9    Hoopa alleges that the Defendants' failure to incorporate the requirements of existing law

10   within the contracts themselves, by itself, injures Hoopa.  Such injury is redressable by an order

11   holding Defendants' approvals unlawful and remanding for reform of the contracts to comply

12   with the requirements of Section 3404(c)(2).   Given the permanent nature of these contracts,

13   Hoopa's injury must be redressed now.  Hoopa has constitutional standing.

14        1. Hoopa Has Adequately Alleged Injury-in-Fact Arising from Defendants' Failure
             to Incorporate Requirements of Existing Law, Which Protect Hoopa and the
15           Trinity River, Within the Contracts as Required by CVPIA § 3404(c)(2).

16   In CVPIA §3404(c)(2), Congress mandated that Defendants incorporate the requirements

17   of existing law within the terms of CVP contracts.  Hoopa has identified numerous requirements

18   of existing law that directly protect its interests in fish and water resources of the Trinity and

19   Klamath Rivers.  In conflict with the CVPIA and NEPA, Defendants have approved permanent

20   contracts without any prior environmental review and without inclusion of many requirements of

21   existing law that protect Hoopa rights and Trinity River resources.  These requirements include,

22   for example, limitations and conditions on water deliveries to the CVP arising from the 1955

23   Act, mandates of the 1984 Act to implement a program to restore the Trinity River fishery to pre-

24   TRD levels, and requirements to fund ongoing Project restoration and mitigation obligations

25   such as the TRRP and the TRH.  Congress intended, in CVPIA §3404(c)(2) that CVP contracts

26   would expressly incorporate these (and other) requirements of existing law for the protection of

resources affected by ongoing long-term CVP operations.  Defendants' failure to adhere to this statutory requirement and failure to incorporate these legal requirements into the contracts injures Hoopa.  Hoopa has standing to challenge Defendants' unlawful acts in this case.

Defendants mischaracterize their action and Hoopa's complaint in their effort to defeat Hoopa's standing.  First, they argue that Hoopa is not harmed by their contract approvals because, according to Defendants, the contracts do nothing more than allow prepayment of construction costs to the United States; thus, they argue there is no change in the status quo.  ECF No. 19, pp. 5-10.  This characterization of the challenged contract approvals is incorrect.  The WIIN Act authorizes contract conversions from short-term contracts that are now renewable only in the Secretary's discretion into permanent contracts.  This significant change in contract duration, from short-term to permanent, is alone a change in the status quo.  *Pit River Tribe v. U.S. Forest Service*, 469 F.3d 768, 784 (9th Cir. 2006) (extension of contractual term effected change in status quo).  Thus, it is imperative that Defendants comply with CVPIA § 3404(c)(2) and include as contract terms all requirements of existing law, including those that will protect Hoopa and the Trinity River from CVP's ongoing operations now and in years to come.  The WIIN Act authorizes the contract conversions only in compliance with statutory requirements including the CVPIA, which the WIIN Act explicitly preserves (e.g., sections 4011(d) and 4012).

The contracts have also been unlawfully approved without environmental review required by CVPIA and NEPA.  Defendants fail to acknowledge that once the newly authorized prepayment occurs, the existing acreage limitations and full cost pricing will no longer apply, which will potentially change water demand and uses by CVP contractors. WIIN Act, §4011(c)(1).  Given the discretion reserved to the Secretary to include appropriate terms and conditions in the contracts, prior environmental review (in addition to being required by the CVPIA and NEPA) is critical to ensure that adequate protections are included in the contracts going forward.  NEPA analysis would also inform what other requirements of existing law should be included as binding contract terms under CVPIA § 3404(c)(2).

Thus, far more is at play here than just debt repayment, which is not at issue in Hoopa's complaint. A comparison of the contracts reveals many textual differences in addition to the repayment provisions.  Defendants are approving contracts that will be permanent in duration but are doing so without complying with CVPIA and NEPA requirements specifically intended to prevent execution of long-term contracts without first conducting appropriate environmental review and including applicable legal requirements as binding contract terms.  Without a finding by this Court that Defendants are acting unlawfully, there will never be a subsequent chance for Hoopa to demand inclusion of the protective contract terms in the CVP contracts. Absent correction of Defendants' unlawful approvals here, the protective requirements mandated by Congress in CVPIA § 3404(c)(2) will be lost forever.  Hoopa has standing to challenge Defendants' unlawful acts that directly threaten Hoopa interests in current and future protection of Trinity River fish and water. *NRDC v. Patterson*, 791 F. Supp. 1425 (E.D. Cal. 1992) (environmental groups had standing to challenge CVP contracts based on claim that federal defendants failed to incorporate requirements of state law in contracts).

Defendants also argue that: "In no way do the converted contracts affect the amount of water that will be delivered in any given year to any particular water contractor." ECF # 19, p. 10.  This ignores that the amount of water delivered in any given year to any particular contractor depends on legal limitations found within the contract and in federal laws that govern the contract. *See, e.g.,* ECF # 19-2, Articles 3, 11, and 12 (re factors that affect water availability). In other words, the terms contained within the contracts themselves are relevant to determining the amount of water that will be available for delivery in any given year to a particular water contractor.  There are statutory constraints such as the provisos in section 2 of the 1955 Act that establish priority for in-basin use of TRD water for the Trinity fishery and in-basin economic development over diversions to the Central Valley.  CVPIA §3404(c)(2) mandates that the requirements of existing law be incorporated as terms within the contracts themselves in order to avoid disputes about the Federal Government's authority to withhold water necessary for

compliance with federal law. The contracts, as approved by Defendants, take a diametrically opposite approach. Rather than incorporating federal law requirements as contract terms as required by CVPIA § 3404(c)(2), Article 37 of the Westlands contract expressly reserves the contractors' rights to dispute the applicability of any federal law that affects CVP operations. This is directly contrary to CVPIA § 3404(c)(2) and places Hoopa's rights and interests at risk.

Failure to comply with CVPIA § 3404(c)(2), and to include existing legal requirements as contract terms, will undermine implementation of laws designed to protect Hoopa. For example, CVP contractors have repeatedly, but unsuccessfully, challenged the Secretary's authority under the 1955 Act, §2, to release flows for protection of fish migrating through the Lower Klamath River to spawning grounds in the Trinity River. *See e.g., Haugrud*, 848 F.3d at 1227-31; *San Luis & Delta-Mendota Water Auth. v. Jewell*, 52 F. Supp. 3d 1020 (E.D. Cal. 2014). They have also disputed Hoopa's rights arising under proviso 2 of the 1955 Act, §2 (re 50,000 acre-feet). They have also resisted compliance with their payment obligations under CVPIA §3406(b)(23). Express inclusion of the requirements of existing law as binding contract terms would eliminate or at least limit the contractors' ability to dispute the Federal Government's authority to make releases under the 1955 Act for protection of fish or other implementation of Hoopa rights under §2 of that Act. While the United States and contractors would of course remain bound by federal laws such as the 1955 Act and CVPIA §3406(b)(23) regardless of the contract terms, Congress in CVPIA §3404(c)(2) required the affirmative incorporation of the existing legal requirements as contract terms to avoid disputes regarding application of federal laws to CVP operations.

Defendants argue that their approval of the WIIN Act contracts has not actually resulted in lowered water levels in the Trinity River. This argument is meritless because Hoopa does not base its standing on any allegation that the recent contract approvals have yet resulted in a current change to Trinity River water levels. Rather, Hoopa alleges that Congress mandated in CVPIA § 3404(c)(2) that CVP contractors be bound by contract to the requirements of existing law, such as those that protect Hoopa and the Trinity River today and in years to come. The

failure to include the required protective provisions in these now-permanent contracts removes a layer of contractual protection that is owed to Hoopa, as mandated by Congress. Hoopa is directly harmed by the Defendants' failure to bind the contractors to applicable legal requirements within the contracts themselves.  No further showing of harm is required. [6]

In addition, specific federal programs and operations of critical importance to Hoopa are funded through collection of Operation and Maintenance (O&M) charges from CVP contractors, including the Trinity River Restoration Program and the TRH.  The WIIN Act contracts, such as the example at ECF # 19-2 make reference to O&M but do not clearly specify that these Trinity River focused programs are Project components or that they will remain funded through O&M charges.  The contracts specifically address funding for certain CVPIA measures, such as the Restoration Fund, but contain no similar provision for the TRRP (made wholly reimbursable under 3406(b)(23)) or the TRH.  Failure to specifically include these existing requirements of law as contract terms will place funding for these operations, which are critical to protection of Hoopa fishing rights, at risk.   Hoopa's allegations of possible loss of funding are alone sufficient to withstand a motion to dismiss on standing grounds. *Ross*, 362 F. Supp. 3d at 738 (possible loss of funding relating to undercounting in census sufficient to confer standing); *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1110 (N.D. Cal. 2019) (allegations regarding loss of funding attributed to federal action sufficient to confer standing). The TRRP arose from CVPIA §3406(b)(23) as a program to restore the fish habitat in the Trinity River harmed by the TRD. Congress expressly identified Hoopa as the beneficiary of §3406(b)(23) and required Hoopa's concurrence in the program ultimately approved.  CVPIA, § 3406(b)(23).  Likewise, the TRH is a mitigation fish hatchery developed under the authority of the 1955 Act that is fundamental to the exercise of Hoopa fishing rights.  In the 1984 Act, referenced in CVPIA § 3406(b)(23), Congress required modernization of the TRH.  CVP contractors have disputed their continuing

---

[6]  Plaintiffs need not wait until environmental harm occurs to have standing.  The threat of future harm is sufficient.  *Cent. Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 22

1    obligation to fund Trinity River restoration measures through O&M charges.  Thus, it is critical

2    that the Defendants bind the CVP contractors, pursuant to express contract terms, to fund these

3    programs that are crucial to protection and implementation of Hoopa reserved rights.

4         Defendants also improperly intertwine their arguments regarding the merits of Hoopa's

5    claims with their standing arguments.  For purposes of the standing analysis, the Court must

6    assume that the plaintiff will prevail on the merits.  *NRDC v. Kempthorne*, 2008 U.S. Dist.

7    LEXIS 111588, *41 (E.D. Cal. 2008), citing *Defenders of Wildlife v. Gutierrez,* 532 F.3d 913,

8    924, 382 U.S. App. D.C. 312 (D.C. Cir. 2008) ("In reviewing the standing question, the court

9    must be careful not to decide the questions on the merits for or against plaintiff, and must

10   therefore assume that on the merits the plaintiffs would be successful in their claims.").  Thus,

11   Hoopa need not prove that it will actually prevail in order to establish standing – it simply has to

12   allege harm consistent with the minimum constitutional standard – and it has plainly done so.

13        2.   <u>Hoopa Also Satisfies the Causation and Redressability Elements of Standing.</u>

14        Regarding causation, Defendants argue that their approvals have not yet caused any

15   decrease in water levels.  Hoopa's suit is not based on any current decrease in water levels.

16   Hoopa's suit is based on the Defendants' fundamental failure to incorporate the requirements of

17   existing law, including those that expressly protect Hoopa and its rights, within these now-

18   permanent contracts.  That failure constitutes harm, by itself, because it illegally removes a

19   contractual layer of protection that the federal trustee is directed by statute to include in contracts

20   for CVP water.  That harm is caused directly by the Defendants' failure to adhere to the

21   requirements of CVPIA §3404(c)(2).  *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014)

22   (causation requirement of Article III standing only demands showing that plaintiff's injury is

23   fairly traceable to the challenged action of defendant). Failure to include existing requirements of

24   law as contract terms could lead to additional concrete injury such as insufficient funding for the

25   TRRP and TRH and future disputes about implementation of certain laws applicable to the CVP

26   and its contractors, such as the 1955 Act, §2.  The only time that Hoopa will be able to address

1  and rectify this current harm (the failure to include required terms in the contracts) is now.

2      The injury to Hoopa (the failure to include the existing legal requirements as contract

3  terms) is redressable by this Court through an order finding the Defendants' approvals unlawful,

4  rescinding the current contracts, and remanding to the Defendants for further action consistent

5  with CVPIA §3404(c)(2).  *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v.*

6  *U.S. Dep't of Energy,* 232 F.3d 1300, 1305 (9th Cir. 2000) (court has authority under the APA to

7  order recission of a contract for sale if the federal agency "acted in excess of statutory authority

8  or without observance of the procedures required by law"); *Port of Astoria v. Hodel,* 595 F.2d

9  467, 479 (9th Cir. 1979) (court may declare contract unenforceable pending preparation of

10  required environmental review).  Hoopa plainly has constitutional standing.

### C.  CVP Contractors Are Not Required Parties in this APA Proceeding, But Even If They Were, Dismissal Is Not Appropriate Because They Can Be Joined.

12      Defendants contend that Hoopa must join dozens of individual contractors to this suit as

13  required parties pursuant to FRCP 19 before its APA claims can be adjudicated.  Under FRCP

14  19(a)(1), a party is required if: (A) the court cannot accord complete relief among existing parties

15  in that person's absence; or (B) that person claims an interest relating to the subject of the action

16  and is so situated that disposing of the action in the person's absence may (i) as a practical matter

17  impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject

18  to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

19      CVP contractors are not required here.  This Court can accord complete relief to Hoopa

20  in the contractors' absence.  Hoopa has no claims against any contractors and only challenges the

21  Defendants failure to adhere to its obligations under the CVPIA, the Law of the Trinity River,

22  NEPA, and APA.  Hoopa seeks a ruling that the Defendants' contract approvals are unlawful and

23  remand to the federal agencies to take action to reform the contracts in compliance with law.

24      Nor does FRCP 19(a)(1)(B) require the CVP contractors' joinder.  Hoopa's suit will have

25  no substantive effect on any existing legal entitlement of any CVP contractor for multiple

26  reasons.  First, the CVP contractors are all beneficiaries of existing contracts that currently entitle

them to water deliveries from the CVP.  ECF #19-3.  This suit does not challenge contractors'

existing entitlements under their current (pre-WIIN Act) contracts.  Even if Hoopa prevails,

invalidation of the converted WIIN Act contract approvals at issue in this suit will not impair any

of the CVP contractors' ability to receive water under their existing contracts.  Second, Hoopa

understands that the contracts at issue here, although approved by Defendants, have not yet been

validated in accordance with California state law and thus are not yet binding on the United

States.  Thus, at this time, CVP contractors do not hold any enforceable rights under the

converted contracts despite the Defendants' approvals challenged here. Third, CVP contractors

have no rights under unlawful contract approvals.  Fourth, this suit if successful would delay but

not deny CVP contractors their right to request and receive a contract under the WIIN Act.

Hoopa does not challenge the CVP contractors' rights to obtain a contract under the WIIN Act.

Rather, Hoopa challenges the failures of the Defendants to conduct appropriate review pursuant

to NEPA and to include required contract terms under CVPIA §3404(c)(2) to protect Hoopa.

Compliance with these legally mandated requirements will not impair any rights of absent CVP

contractors, especially given their existing interim contract rights that are not at issue here.  Nor

has any CVP contractor moved to intervene to protect any of their alleged interests here.

Because this case does not impair existing legal rights of CVP contractors, neither the

Ninth Circuit's ruling in *Dine Citizens Against Ruining Our Environment v. BIA*, 932 F.3d 843

(9th Cir. 2019) nor *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276

F.3d 1150 (9th Cir. 2002) apply here.  Rather, this case is governed by *Makah Indian Tribe v.*

*Verity*, 910 F.2d 555 (9th Cir. 1990) which held that a suit seeking compliance with procedural

requirements and a lawful administrative process can go forward without interested non-parties.

To the extent that CVP contractors are required parties, there is still no basis for dismissal

because it is undisputed that such parties can be joined if necessary.  FRCP 19(a)(2); 19(b).

### IV.    <u>CONCLUSION</u>

The Court should deny Defendants' motion to dismiss Hoopa's CVPIA claim.

1

2      DATED this 9th day of November, 2020.

3                          MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE

4                          ___/s/ Thomas P. Schlosser_____
                           Thomas P. Schlosser WSBA #06276
5                          Attorneys for Plaintiff Hoopa Valley Tribe

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such to the

attorneys of record.


_____*/s/ Thomas P. Schlosser*_____
Thomas P. Schlosser

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 27